PETER A. SCHEY (CAL. BAR NO. 58232)
CARLOS R. HOLGUIN (CAL. BAR NO. 90754)
CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: pschey@centerforhumanrights.org
        crholguin@centerforhumanrights.org

BENJAMIN L. CRUMP, ESQUIRE (FL BAR NO. 72583)
PRESIDENT, NATIONAL BAR ASSOCIATION
PARKS & CRUMP, L.L.C.
240 N. Magnolia Drive
Tallahassee, FL 32301
Telephone: (850) 222-3333
Email: bcrump@parkscrump.com

Counsel for Petitioner
(Petitioner's Counsel Continued Next Page)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUTULU SHAKUR,<br><br>            Petitioner,<br><br><br>       - vs -<br><br><br>LOUIS MILUSNIC, WARDEN, BUREAU OF PRISONS;<br>FEDERAL BUREAU OF PRISONS, UNITED STATES DEPARTMENT OF JUSTICE;<br>UNITED STATES PAROLE COMMISSION, UNITED STATES DEPARTMENT OF JUSTICE,<br><br>            Respondents. | Case No. 19-cv-00727<br><br>PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241<br><br>(CLASS ACTION) |

1  MICHAEL BRENNAN (CAL. BAR NO. 40436)
2  HEIDI RUMMEL (CAL. BAR NO. 183331)
   POST-CONVICTION JUSTICE PROJECT
3  USC GOULD SCHOOL OF LAW
4  699 Exposition Blvd.
   Los Angeles, CA 90089
5  Telephone: 213.740.2865
   Facsimile: 213.821.5746
6  Email: mbrennan@law.usc.edu
7        hrummel@law.usc.edu

8
   PROFESSOR LENNOX S. HINDS (NY BAR NO. 1696574)
9  NATIONAL CONFERENCE OF BLACK LAWYERS
10 75 Maiden Lane, Suite 222
   New York, NY 10038
11 Telephone: (212) 864-4445
12 Email: LennoxHinds@aol.com

13 DEIDRA L. MCEACHERN (DC BAR NO. 418572)
14 NATIONAL CONFERENCE OF BLACK LAWYERS
   9701 Apollo Drive, Suite 100
15 Largo, MD 20774
   Telephone: (301) 925-4069
16 Facsimile: (866) 929-1915
17 Email: mceachernlaw@aol.com

18
   Of Counsel:
19 MICHAEL W. WARREN (NY BAR NO. 1686856)
20 LAW OFFICE OF MICHAEL W. WARREN, P.C.
   30 Wall Street, Suite 800
21 New York, New York 10005
22 Telephone: 212.709.8200
   Facsimile: 212.943.230
23 Email: tarifwarren@aol.com

24
   TERI THOMPSON (GA BAR NO. 443999)
25 TERI THOMPSON, LLC
26 2330 Scenic Highway
   Snellville, Georgia 30078
27 Telephone: 770.674.2890
   Facsimile: 888.329.7330
28

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- ii -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

Email: terithompson17@gmail.com

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- iii -

## I. PRELIMINARY STATEMENT

1.   Having served over thirty years of his federal sentence under the Parole Commission and Reorganization Act of 1976 ("PRCA"), Petitioner Mutulu Shakur became eligible for release on "mandatory parole" pursuant to 18 U.S.C. § 4206(d) on February 10, 2016. Rather than release Shakur on mandatory parole in February 2016, the U.S. Parole Commission ("Commission") scheduled a hearing to determine Shakur's mandatory parole on April 7, 2016.

2.   The Commission denied Petitioner mandatory parole under the exceptions described in 18 U.S.C § 4206(d), finding his 1990 positive drug test and four minor phone-related infractions over 30 years of incarceration to be "serious" and "frequent" institutional violations under the meaning of § 4206(d). The Commission further found a likelihood Petitioner would commit future crimes upon release based on Mr. Shakur's non-violent political beliefs and his past occasional use of the term "stiff resistance" to sign correspondence. Petitioner has not had a single rule violation during thirty years of incarceration involving violence or the threat of violence, he has an excellent prison record according to Bureau of Prison's ("BOP") staff, and has for decades renounced the kind of criminal conduct he was engaged in more than thirty years ago to further political ends. He has consistently expressed support for peaceful and lawful steps to address issues of social justice

3.   The Commission scheduled Petitioner for a new parole hearing on May 3, 2018. On April 18, 2018, Petitioner through counsel submitted a letter to the

Chairperson Smoot, U.S. Parole Commission, and the Hearing Examiner who would preside at Petitioner's May 3, 2018, hearing. The detailed letter explained that there is adequate evidence that Mr. Shakur has not seriously or frequently violated prison rules while incarcerated and would not reoffend and was therefore entitled to discretionary release under the terms 18 U.S.C. § 4206(a), and mandatory release under the terms of § 4206(d). In addition to the fact that Petitioner had now served two additional years in custody since his last parole hearing without a single rule violation, Petitioner also provided new evidence in the form of letters by BOP Associate Warden Keilman, familial and professional support letters, an analysis of Mr. Shakur's relatively exemplary prison record, and a positive comprehensive risk assessment report. The aforementioned evidence overwhelmingly showed that Mr. Shakur was rehabilitated, remorseful, able to re-integrate into society, and extremely unlikely to ever reoffend. See Letter from Peter Schey to Parole Commission (April 8, 2018) filed herewith as Appendix 1.

4.     Mr. Shakur had a subsequent parole hearing on May 3, 2018. At the parole hearing various BOP officials testified that Petitioner has been cooperative with staff in every way, had no rule violations since a 2014 telephone violation (discussed *infra,* in which he spoke to a group of university professors and students and urged non-violent peaceful political engagement), and generally there was no reason to believe he would

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 2 -

reoffend if released. None of these persuasive evidence made any difference to the Parole Commission.

5.   At the parole hearing Petitioner made the following statement:

At the time [of the crimes], we thought we were part of some violent political struggle against injustice … But that thinking was destructive, and it was hateful … I understand that no one else is to blame for my participation in these crimes – I am responsible for my choices. I understand that I alone must accept responsibility for my crimes … Having lost a brother and stepson to violence, I understand far better now the impact on those I left behind … I feel nothing but shame and disgrace for what I did …

But I also want the Commission to understand how I have changed.  From prison, I have watched the world change around me. I can see how my radical youthful views and behavior were pointless and destructive … [F]or many years [over 20 years, according to the record] I have totally rejected violence or the use of violence. For the past twenty years, I have encouraged the inmate population to reject gang affiliation, and to reject criminal behavior. I have repeatedly encouraged inmate groups and groups on the outside to bring about social change through peaceful, positive and constructive means …

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 3 -

Inside the prison I constantly speak out about the importance of

pursuing social change through peaceful means …

   If I am granted release on supervised parole, I look forward to

being a productive and peaceful member of my community; I look

forward to continuing to promote the importance of peaceful and lawful

contributions of all people to help those who have special challenges in

life …

   I have used the past 30 years to strengthen my inner beliefs, to

strengthen my belief in God, to strengthen my commitment to peaceful

social change … I have cooperated with and respected the staff of the

Bureau of Prisons. *I have engaged in no acts of violence or threats of*

*violence during 30 years of incarceration*. That's the course I am

committed to stay on if released from this prison on supervised parole.

Parole Hearing Statement of Mutulu Shakur, filed herewith as Appendix 2.

   6.    Associate Warden S. Keilman, the Associate Warden of the prison

where Mr. Shakur has been incarcerated for many years, stated as follows:

From my observation and that of my colleagues, it is widely held that …

[Shakur] has consistently dedicated himself to maintain character that is

consistent with our goals of the safe and orderly operation of our facility,

program involvement and he's demonstrated a personal initiative to

enhance the overall environment to which he is engaged by maintaining

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 4 -

a degree of respect across the various prisoner groups and my staff.

Further, … this pattern has been consistent throughout the duration of

his placement here; as evidenced by his direct involvement in

intervention of racial conflicts as it has been specifically reported to me.

See Exhibit 1 to Appendix 1 (emphasis supplied)

7.      Petitioner has an effective and realistic rentry plan he shared with

the Commission. Petitioners' children have all grown up to become reputable

and law-abiding citizens serving their communities in numerous positive ways

and offered to provide Petitioner with permanent housing and support upon his

supervised release. Appendix 1 at pp. 2-5. Petitioner also has firm offers of

employment. *Id*. at 3-4. He also has the support of over 70 faith-based leaders

who affirm that he "has consistently promoted and supported the peaceful

resolution of social conflicts." Appendix 1, Exhibit 7.

8.      At the parole hearing, the same Hearing Examiner who had

recommended against parole two years earlier, stated that he had not had

time to read the exhibits submitted to him and the Commission's

Chairperson on April 8, 2018, and he did not have time to review them

before rendering his adverse decision and recommendation at the conclusion

of the hearing. He conceded there are only a handful of examiners assigned

hundreds or more of cases throughout the country. The Commission's

Hearing Examiners cannot possibly be familiar with the records in the cases

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 5 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

they preside over given their unreasonable workload. The Hearing Examiner dedicated most of the hearing to the testimony of relatives or associates of the victims, even though this testimony appears to be irrelevant to the factors to be considered under the mandatory parole provision in 18 U.S.C. § 4206(a). Even though for years Petitioner has accepted responsibility for the harms caused by the conspiracy in which he participated, including in previous parole hearings, the Hearing Examiner stated at the conclusion of the hearing that the alleged recency of Petitioner's acceptance of responsibility showed that his acceptance of responsibility was disingenuous and insincere. No evidence of any kind supported this biased and arbitrary conclusion.

9.      In a Notice of Action dated May 25, 2018, the Commission adopted the Hearing Examiner's recommendation to again deny parole, stating "there have been no significant developments or changes in your case to warrant a change in the previous decision to deny mandatory parole and continue to expiration." Notice of Action (May 25, 2018) ("Notice of Action") at 1, filed herewith as Appendix 3. The Notice of Action states "the Commission continues to find that, for the same reasons as stated in the Notice of Action dated April 20, 2016 ("2016 Notice of Action"), that you have seriously violated the rules of the institution and that there is a

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 6 -

reasonable probability that you will [if released] commit Federal, State, or Local crime[s]." *Id*.

10.     The Commission included only one additional reason for denying parole in May 2018. The Commission "considered [Mr. Shakur's] statement at this hearing in which you now, for the first time ever, admit culpability for your offense of conviction …" *Id*. Without pointing to any evidence in the record, the Commission simply adopts the Hearing's Examiner's finding that the supposed recency of Petitioner's acceptance of responsibility, made his acceptance of responsibility "suspect and … self-serving and disingenuous." *Id*.

11.     The assertion that this was the "first time ever" that Petitioner accepted culpability or expressed remorse for his crimes is erroneous and again evidences the Commission's failure to review or consider the entire record. Over the years, Petitioner has repeatedly and increasingly expressed remorse and accepted responsibility for his crimes.

12.     On June 25, 2018, Petitioner submitted a timely Petition for Reconsideration of the new denial of parole ("Petition for Reconsideration"). The Petition for Reconsideration included ten arguments supporting the position that under any reasonable interpretation of the apposite federal statute, Mr. Shakur should be released on parole. *See* Appendix 4 filed herewith.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 7 -

13.     *While traditionally such appeals would be heard by a National Appeals Board, the three-member Commission now serves as its own Appeals Board and therefore simply reviews its own decisions.* There is now no independent administrative review when one appeals to the so-called National Appeals Board, which is simply the same Commission members meeting with a different name.

14.     On July 25, 2018, the National Appeals Board (aka the Commission) rejected Petitioners' Petition for Reconsideration in all respects and reaffirmed the Commission's initial April 2018 Notice of Action. *See* Appendix 5 filed herewith.

15.     Regarding federal parole determinations and Commission interpretations of federal law, a federal court may adjudicate whether the Commission has (1) acted outside of or misinterpreted its statutory or regulatory mandates; (2) made a decision that was arbitrary, irrational, unreasonable, irrelevant or capricious; or (3) violated the Constitution.

16.     In violation of its enabling statute, promulgated regulations, fundamental fairness required by the due process and equal protection guarantees of the Fifth Amendment, and freedom of speech enshrined in the First Amendment, the Commission, as it had done in 2016, *inter alia* –

(1)     misinterpreted its enabling statute § 4206 to make a denial of mandatory parole under § 4206(d) effectively a permanent denial of parole by

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 8 -

not also evaluating prisoners for release under § 4206(a) once denied parole under § 4206(d);

(2)     proffered entirely pretextual and irrational reasons for its denial of mandatory parole, including implausible interpretations of the terms "seriously" and "frequently" as used in § 4206(d), terms the Commission has failed to define for purposes of uniformity in parole decisions;

(3)     impermissibly considered and retaliated against the content of Petitioner's protected and entirely non-violent political speech;

(4)     failed to give Petitioner and counsel notice prior to the parole hearing, as required under its own regulations, of letters and testimony on which it intended to rely at the parole hearing;

(5)     by resting in large part on its 2016 decision, and in violation of its own regulations, the Commission considered ancient non-violent prison rule violations and non-violent statements made by Petitioner not considered in prior parole hearings;

(6)     allowed and relied upon irrelevant and unsupported testimony from a former prosecutor and an FBI investigator as to Petitioner's current state of mind and likelihood to recidivate, ignoring its mandate to operate independently of other bureaus in the Department of Justice;

(7)     ignored, without explanation, the entire record of evidence that Petitioner has for over two decades repeatedly and publicly denounced the use

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 9 -

of violence in any form to achieve political ends, including the consistent and uniform observations of BOP officials; and

(8)     erroneously and arbitrarily rejected Petitioner's statements of remorse and acceptance of responsibility by stating, with no support in the record, that his statements were "suspect … self-serving and disingenuous."

17.     The Commission has also treated Petitioner far differently from similarly situated inmates who have been considered for mandatory release. Based on records released by the Commission on September 23, 2016, in response to a request for documents under the Freedom of Information Act ("FOIA") of all mandatory parole (§ 4206(d)) Notices of Decision issued over the past two years (the time period covered by the FOIA request), the Commission had not denied mandatory parole to any inmate with an institutional violation history similar to Petitioner's prison history.

## II. JURISDICTON AND VENUE

18.     This Court has jurisdiction over this action pursuant to U.S. Const. Art. III; 28 U.S.C. § 2241. Petitioner also believes the court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

19.     Petitioners' prayer for declaratory relief is brought pursuant to 28 U.S.C. §§ 2201 and 2202.

20.     Petitioner is detained in this judicial district. Venue is properly in this court pursuant to 28 U.S.C. § 2241(a) ("The order of a circuit judge shall be

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 10 -

entered in the records of the district court of the district wherein the restraint complained of is had"); *see also* 28 U.S.C. § 1391(b) and (e)(1), (2), and (4).

## III. PARTIES

21.     Petitioner Mutulu Shakur is incarcerated at the United States Penitentiary, Victorville (USP Victorville), 13777 Air Expressway Blvd., Victorville, CA 92394, under Bureau of Prisons Register No. 83205-012.

22.     Respondent Louis Milusnic is the Warden of the United States Penitentiary, Victorville (USP Victorville), 13777 Air Expressway Blvd., Victorville, CA 92394. As Warden, Respondent Shinn has custody of Petitioner.

23.      Respondent the Federal Bureau of Prisons is a United States law enforcement agency responsible for the administration of the federal prison system.

24.     Respondent the U.S. Parole Commission is the federal agency responsible for making parole decisions regarding Petitioner's release or continuation in custody.

## IV.  CLASS DEFINITION

25.     The proposed class pertains only to Petitioner's First Claim for Relief: Violation of the Parole Commission and Reorganization Act, 18 U.S.C. § 4206(d), as interpreted and applied in 28 C.F.R. § 2.53, and Fifth Amendment due process and equal protection, by effectively making denial of mandatory parole under § 4206(d) a permanent denial of parole and refusing to consider

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 11 -

release under § 4206(a) when the Commission denies parole under § 4206(d), and by failing to issue and consistently apply standards regarding the Commission's interpretation of the terms "serious" and "frequently" as used in § 4206(d).

26.     Pursuant to Rules 23(a)(1)-(4) and (b)(2) of the Federal Rules of Civil Procedure, Petitioner brings this action as a class action on behalf of the following proposed class:

> All current United States Bureau of Prisons' inmates (1) denied parole under 18 U.S.C. § 4206(d) who the Parole Commission failed or refused to consider for release on parole under § 4206(a), or (2) whose parole was denied based on the prisoner having committed a "serious" rule violation or having "frequently" violated prison rules without the Commission having applied any published and known standards regarding it's interpretation of these terms.

27.     The size of the class is several hundred prisoners and is so numerous that joinder of all members is impracticable.

28.     The claim of Petitioner and those of the proposed class members raise common questions of law and fact. These questions are common to the named parties and to the members of the proposed class because Respondent, the U.S. Parole Commission has acted or continues to act on grounds generally applicable to both the Petitioner and proposed class members. Petitioner's claim

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 12 -

is typical of the class claim.

29.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Respondent US Parole Commission. Prosecution of separate actions would also create the risk that individual class members will secure court orders that would as a practical matter be dispositive of the claims of other class members not named parties to this litigation, thereby substantially impeding the ability of unrepresented class members to protect their interests.

30.     Respondent US Parole Commission, its agents, employees, predecessors and successors in office have acted or refused to act, or will act or refuse to act, on grounds generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole. Petitioner will vigorously represent the interests of unnamed class members. All members of the proposed class will benefit by the action brought by Petitioner. The interests of the Petitioner and those of the proposed class members are identical. Petitioner's counsel includes attorneys highly experienced in federal class action litigation involving issues of statutory construction.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 13 -

## V.     RULES RELATING TO U.S. PAROLE COMMISSION

31.     Congress passed the PCRA[1] in 1976 to "provide[] an infusion of due process in Federal parole procedures,"[2] which Congress characterized at that time as "the single most inequitable, potentially capricious, and uniquely arbitrary corner of the criminal justice map."[3]

32.     Under the PCRA, the Parole Commission would have nine members: a chair, three National Commissioners who would sit on the National Appeals Board, and five Regional Commissioners who would make first-level parole decisions in their geographic regions. *See* 18 U.S.C. §§ 4202, 4204(a)(5).

33.     The Sentencing Reform Act of 1984 ("SRA"), at § 218(a)(5), 98 Stat. 2027, effective November 1,1987, abolished federal parole and created sentencing guidelines. Section 235(b)(1)(A), 98 Stat. 2032, kept the Parole Commission alive for five years to process cases of prisoners convicted of crimes committed before the effective date of the SRA. Since that time, Congress has periodically extended the life of the Commission to provide parole hearings for a dwindling number of long-term prisoners sentenced under the

[1] Pub. L. No. 94-233, 90 Stat. 219 (1976), now codified (as amended) at 18 U.S.C. §§ 4201-4218.
[2] H.R. Rep. 94-184, 94th Cong. 1st Sess. 2 (1975).
[3] *Id.*

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

PCRA.[4] In 1997, Congress decreased the number of Commissioners to five.[5]

Currently there are only three acting Parole Commissioners.[6]

34.    Under the PCRA, a Hearing Examiner presides at each parole

hearing, prepares a summary of findings, and makes a recommendation on

parole. That recommendation is reviewed by a second examiner, and a third, if

necessary, and finally by a Regional Commissioner. 28 C.F.R. §§ 2.13(a),

2.23(b).[7] In some cases, such as Petitioner's, the case is designated as an

"Original Jurisdiction" case under 28 C.F.R. §2.17. In an Original Jurisdiction

case, the entire Commission (currently only three people) votes on the

disposition of the parole decision and then also votes on a prisoner's appeal of

the parole decision.[8]

---

[4] The life of the Commission was last extended by the United States Parole
Commission Extension Act of 2018, Pub. L. 115-274 (extending
the Commission for two additional years).

[5] *See* National Capital Revitalization and Self-Government Improvement Act of
1997, § 11231(d), Pub. L. No. 105-33, 111 Stat. 745-46 (1997).

[6] *See* Parole Commission webpages, "Meet the Chairman" and "Meet the
Commissioners" at https://www.justice.gov/uspc/meet-chairman and
https://www.justice.gov/uspc/meet-commissioners (listing only three members)
(last checked March 16, 2018).

[7] It is not clear that the Commission currently designates any of its staff to serve
as Regional Commissioners. The Commission appears now to have only three
voting members.

[8] *See* 28 C.F.R. § 2.17 ("The decision in an original jurisdiction case shall be
made on the basis of a majority vote of Commissioners holding office at the time
of the decision.").

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 15 -

35.     At present, the same three Commissioners who initially deny parole in Original Jurisdiction cases then sit as a "National Appeals Board" ("NAB") to hear any appeal. As such, there is now no meaningful administrative appellate review of denials made under Original Jurisdiction cases under C.F.R. §§ 2.17 and 2.27.

## V. STATEMENT OF FACTS

### A.     Petitioner's Pre-Conviction Background

36.     Jeral Wayne Williams, now known as Mutulu Shakur, was born August 8, 1950 in Baltimore, Maryland, the only son of a single mother blinded from glaucoma. Growing up in an African American community in Queens, Petitioner was confronted with gang violence and was profoundly disturbed by the epidemic of drug addiction, poverty and unemployment among the youth.

37.     At the age of 16, Petitioner joined the Republic of New Afrika and the New Afrikan Independence movement, a social and political movement that advocated for the establishment of an African American state within the U.S. where African Americans could live outside of institutional discrimination. These groups advocated that their goals should be achieved through plebiscites and elections, not political violence.

38.     When he was 20 years old, Petitioner volunteered at Lincoln Hospital in the Bronx in New York. He later helped build the detox program at Lincoln. He traveled to Canada and China to study acupuncture and returned to

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 16 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Harlem where he and colleagues started the Black Acupuncture Advisory Association of North America (BAAANA). He was instrumental in developing protocols for acupuncture treatment of drug addiction. Petitioner also helped prepare petitions to the United Nations in conjunction with the National Conference of Black Lawyers regarding discrimination and disenfranchisement black Americans were experiencing in the United States.

39.     Unbeknownst to Petitioner at the time, the FBI considered his lawful activities sufficient to warrant targeting him through its Counter Intelligence Program (COINTELPRO).

40.     COINTELPRO became public in March 1971. FBI Director J. Edgar Hoover ordered FBI agents to "expose, disrupt, misdirect, discredit, neutralize or otherwise eliminate" the activities of movements and their leaders deemed to be subversive.[9] Under the program "[g]roups and individuals have been assaulted, repressed, harassed and disrupted because of their political views, social beliefs and their lifestyles … Unsavory, harmful and vicious tactics [were] employed—including anonymous attempts to break up marriages, disrupt meetings, ostracize persons from their professions, and provoke target

---

[9] Introduction and Summary (PDF), *Intelligence Activities and the Rights of Americans - Church Committee final report*. *United States Senate website* (United States Government), 1976-04-26. p. 10. Archived (PDF) from the original on 2014-04-18. Retrieved 2014-07-15.

groups into rivalries that might result in deaths."[10] COINTELPRO in some instances encouraged committed civil rights individuals to withdraw from peaceful grassroots organizing and become involved in armed and unlawful actions.

41.    United States District Judge Haight, Jr., the trial judge in Petitioner's case, observed --

Documents obtained by Shakur and associates under the Freedom of Information Act demonstrate that for a considerable time Shakur and the Republic of New Afrika, with which Shakur was at all pertinent times closely associated, have been the subject of illegal surveillance, harassment, and disinformation by the FBI as part of that lamented, unconstitutional project known as COINTELPRO ...[11]

Having failed to review the record, one of the reasons the Commission provided in 2016 for denying parole was Petitioner's *accurate* reference to

---

10 *Intelligence Activities and the Rights of Americans Book II, Final Report of the Select Committee to Study Governmental Operations with respect to Intelligence Activities,* United States Senate (Church Committee), Retrieved May 11, 2006.

11 *United States v. Shakur*, 1988 U.S. Dist. LEXIS 2762, pp. 16-17 (1988). In Judge Haight's view, "Petitioner while exercising constitutional liberties was illegally pursued by federal law enforcement officers ... [T]he rights of Petitioner ... were violated by the COINTELPRO program." *United States v. Shakur,* 1990 U.S. Dist. LEXIS 16219, 1990 WL 200646 (S.D.N.Y. Nov. 28, 1990).

himself as a victim of the COINTELPRO program.  The Commission concluded this showed he is likely to re-offend if released. In 2018 the Commission simply adopted its 2016 decision as the primary basis for its denial of parole. *See* Appendix 3 at 1.

## B.     Petitioner's Indictment, Conviction, and Sentencing

42.     On April 21, 1982, Petitioner and ten others were indicted in the Southern District of New York. The indictment alleged that from December 1976 to October 1981, an integrated "revolutionary armed task force," called simply "The Family," committed a succession of robberies of banks and armored trucks in the Northeast.[12] Additionally, Petitioner and others were charged with participating in a 1979 prison escape of Assata Shakur. The Family's final crime, the "Brinks robbery" of October 20, 1981, resulted in the shooting deaths of a Brinks guard and two police officers as some of the Respondents attempted to flee the scene of the robbery. Four participants in the Brinks robbery were apprehended fleeing the scene, including at least one who admitted killing a Brink's guard. Several others were arrested later, not including Petitioner.[13]

---

[12] The indictment charged that the Respondents conspired to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), two bank robberies, two armed bank robberies and two bank robbery killings.

[13] These Respondents were tried together in 1983. None were convicted of the murders. *United States v. Shakur*, 565 F.Supp. 241 (S.D.N.Y. 1987), *rev'd on other grounds*, 817 F.2d 189 (2d Cir. 1987). Six of the eleven Respondents

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

43.     Petitioner was arrested on February 11, 1986. His jury trial took place in 1988. The indictment alleged a conspiracy to commit several "fund-raisers" or armed robberies to raise money for the political activities of the conspiracy members. On information and belief, no evidence at trial showed that Petitioner ever killed anyone.[14]

44.     The jury found Petitioner guilty of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, participation in a racketeering enterprise, bank robbery, armed bank robbery, and bank robbery murder. At the sentencing of Petitioner, Judge Haight said, "many people have written to me on behalf of Petitioner… It is said that he is a skilled and compassionate healer who has done much good.  I believe that to be true." Judge Haight added, "this case represents an American tragedy of broader dimensions than the Government is willing to acknowledge."

---

named in the indictment were tried: two of the Respondents were convicted on RICO counts, two were found guilty as accessories after the fact, and two were acquitted on all charges. All found guilty have long ago been released. Judy Clark, convicted in the New York state courts for her role in the 1981 robbery of a Brink's armored truck in New York in which police officers and a Brinks guard were killed, has also been ordered released on parole.

[14]  Co-Respondent Tyrone Rison admitted killing a guard during the. Brinks robbery and on information and belief received a *six-year sentence* in return for his testimony at Petitioner's trial that Petitioner was one of the founders of the "Family" and one of its core members. At Petitioner's trial the Government alleged it had a tape-recorded statement of Petitioner admitting that he was present or involved in the Brinks robbery where deaths occurred. However, after conducting an audibility hearing, Judge Haight ruled that the tapes were unintelligible and not admissible evidence.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 20 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

## C.   Petitioner's Overall Institutional Conduct

45.     Petitioner has led a highly productive and exemplary life in prison, influencing his stepson Tupac Shakur's career as a world-wide renowned hip hop artist with messages of non-violence that reached millions of young people.

46.     As established by letters in the record and Petitioner 's statements at several parole hearings, *throughout his incarceration Petitioner has been outspoken against gang violence and crime. He has consistently expressed support for peaceful and constructive changes in all matters involving racial disparities and social justice.* He has never in thirty years of incarceration supported or in any way implied support for criminal conduct or violence to achieve social justice.

47.     There is overwhelming and uncontroverted evidence in the record of Petitioner's rehabilitation and positive conduct. Mr. Shakur's institutional history "serves as perhaps the most reliable evidence that upon release he will not reoffend." Appendix 1 at 6. In a parole hearing held sixteen years ago on July 17, 2002, the Hearing Examiner stated:

> And we've also, of course looked at your salient factor score, which gives
>
> us an idea of what kind of a parole risk you would be. And of course, you
>
> had no prior record prior to this series of events. *And so your salient*
>
> *factor score is the best score it can be.* It's a ten, which would indicate that
>
> you would be falling in the good parole risk category. [Emphasis added].

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 21 -

48.     A BOP supervisor testified at the 2002 hearing:

Well, I'm here on Shakur's behalf. He asked me to come … and speak up

for him. And also want to say as (inaudible) and *it's been honor*

*[supervising him]*. And he's been working for me probably 5 or 6 years,

I'm not sure how long. He's been an asset to the job. He's an asset to me. I

can say he's an asset in general.  [Emphasis added].

49.     A September 29, 2002, Initial Hearing Summary provides the

following assessment of Petitioner's conduct:

Subject has programmed extensively while in BOP custody. *His*

*accomplishments are well documented in the record and also in the*

*progress report dated 5/16/2002*. In addition, subject submitted a copy

of a certificate dated September 2002 in which he completed 33 hours

in the CHANGE Psychotherapy Group program. Subject indicated that

he has been involved in educational and recreational activities from a

cultural diversity standpoint, in that he has helped line up speakers for

workshops ... [Mr. Shakur] is involved in working with older inmates

in helping them and himself understand the impact of aging and stress-

related factors associated with institution life.

50.     The Statutory Interim Hearing Prehearing Assessment prepared for

Petitioner's September 9, 2004, review states in part:

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 22 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

*… [T]he Subject has satisfactory institutional adjustment.* He currently works 32 hours per week on Laundry detail. On 2/13/03, he received a certificate for completion of the Elder Inmate Psychotherapy Group. He has maintained clear institutional conduct for the past 36 months. He has completed the A&O Program and will participate in the Pre-Release Program prior to release.

While the BOP considered Petitioner a candidate for a "pre-release program" as long ago as 2004, the Commission, which knows far less about Petitioner's institutional history than the BOP, has still not authorized his release some fourteen years later.

51.     In January 2005 Petitioner's Unit Manager, A. Kingston, submitted a memorandum to his superiors stating –

[Petitioner] has participated in the programs as recommended by his Unit Team. He has completed his GED requirements and his obligations to the Inmate Financial Responsibility program. He has earned good work performance evaluations … [T]he Unit Team does not believe this inmate to be a management problem and a custody reduction would not pose a threat to the security of this institution …

52.     The Hearing Summary of a February 8, 2005 hearing states:

Since the last hearing this subject has completed Victim Impact, Stress Management and Anger Management. He participates in the Elder

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 23 -

Cycle Therapy Group and he is an active member of the Suicide

Watch Team … The subject receives good work reports from his job

assignment ...

53.     In 2006 Petitioner developed a proposal for the development of a program under which able-bodied inmates would provide assistance to inmates with physical or mental disabilities. The proposal included recommendations such as inmates helping disabled inmates with cell cleanliness, education, support groups, discussion groups, etc.

54.     The Hearing Summary of the parole hearing conducted December 11, 2007, states in part:

[Petitioner] is also a founding member of the Coleman Penitentiary

No. 2 NAACP Chapter and received a certificate for this. Also in

Atlanta, he took 6 hours of Group Psychotherapy Courses. The subject

also participated in Culture Diversity Classes in 2006 and 4 hour

Suicide Prevention Course in April 2005.

55.     Petitioner's Statutory Interim Hearing Pre-Hearing Assessment dated November 5, 2007, states in part:

… the Subject has satisfactory institutional adjustment. He currently

works 32 hours per week on Laundry detail … *He has maintained*

*clear institutional conduct for the past 36 months. He has completed*

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 24 -

*the A&O Program and will participate in the Pre-Release Program*

*prior to release* … [Emphasis supplied].

56.     Petitioner's December 2, 2009, Hearing Summary states in part:

*Discipline: None* ... [Petitioner] has completed five programs since his

hearing in 2007. They include Biography, Explorers in Early America,

... Engineering and Empire, and History and Science Part 1. [Emphasis

added].

57.     Petitioner's March 15, 2012 Interim Hearing Pre-Hearing

Assessment states:

*[T]he subject's adjustment since his last hearing has been without*

*incident* … He has completed seven education courses … He is currently

enrolled in Human Rights … His institutional adjustment has been

satisfactory. *He has participated in programs, maintained a job*

*assignment and has not incurred any DHO infractions since his last*

*hearing* … . [Emphasis added].

58.     Petitioner's July 30, 2014 Interim Hearing Pre-Hearing Assessment

states:

Since his last hearing on 7/2/2012 the subject has completed 98 hours

of educational/vocational programming ….

59.     The Hearing Summary of Petitioner's August 12, 2014, parole

hearing states in part:

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 25 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

*Testimony of Case Manager Mico: Ms. Mico stated that the offender is very respectful of staff and inmates and has continuously availed himself to programs.* She testified that the offender recently suffered a stroke … . [Emphasis added].

60.     The Commission's pre-hearing disclosures made shortly before Petitioner's May 2018 hearing includes a letter from Dr. S. Peprah, Deputy Chief  Psychologist at BOP Victorville reporting on Petitioner's commendable work as a trained Suicide Watch Inmate Companion, including updating staff on all developments during suicide watches and maintaining clear and accurate communication with BOP staff.  The pre-hearing disclosures also includes the results of a BOP Mock Job Fair Interview Evaluation in which Petitioner scored "excellent" in every area and received comments such as "You have a ton experience that should be passed on to the less fortunate and younger generation!" Also in the Commission's pre-hearing disclosure is a letter from Matthew Schuldt, the Assistant Supervisor of Education for the facility, who states in part that Petitioner has been working as an adult continuing education tutor in the prison's Education Department, "maintains a good attitude and motivates other inmates to participate in education programs." Among other things, he "teaches a human rights class to other inmates." [15] As noted above, the

15 The Commission's pre-hearing disclosure documents also contained copies of certificates Petitioner was awarded over the previous year as a result of his

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241
- 26 -
Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Deputy Warden of the prison provided a letter clearly stating that in his professional opinion Petitioner was rehabilitated and would not reoffend if released on parole. *See* Exhibit 1 to Appendix 1.

61.     Throughout this time, Petitioner maintained the best score possible on the Commission's scale of parole risk, a 10 salient factor score. The Salient Factor Score ("SFS") is explicated at length in regulations promulgated at 28 C.F.R. § 2.20 (containing Parole Guidelines and Salient Factor Scoring Manual).

VI.     THE COMMISSION'S MISINTERPRETATION OF ITS ENABLING
        STATUTE AND VIOLATION OF ITS REGULATIONS AND THE
        CONSTITUTION

**A.     The Commission's promulgated regulation on mandatory parole
        conflicts with the authorizing statute and overall statutory scheme
        and prejudices all potential parolees with severe, permanent
        adjudications that are arbitrary, irrational, and capricious.**

62.     Under the normal course, the PCRA affords all prisoners parole hearings under the "discretionary parole" criteria of 18 U.S.C. § 4206(a), which requires the Commission to release a prisoner on parole if the prisoner: (1) has "substantially observed the rules of the institution … to which he has been confined;" (2) if "release would not depreciate the seriousness of his offense or promote disrespect for the law;" and (3) if "release would not jeopardize the

---

continuing education programs, including for completing courses in human rights, financial management, parenting skills, tutoring and becoming a Microsoft Expert.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241                                                    Center for Human Rights & Constitutional Law
                                                                   256 S. Occidental Blvd.
                                                                   Los Angeles, CA 90057
                                                                   213/388-8693
                                    - 27 -

public welfare." 18 U.S.C. § 4206(a).[16]

63.     Congress also provided that prisoners sentenced to longer terms who had not received discretionary parole after two thirds of their term or 30 years were afforded a second *more liberal path* to parole under 18 U.S.C. § 4206(d):

> Any prisoner, serving a sentence of five years or longer, who is not
>
> earlier released under [18 U.S.C. § 4206(a)] …, shall be released
>
> on parole after having served two-thirds of each consecutive term
>
> or terms, or after serving thirty years of each consecutive term …
>
> Provided, however, That the Commission shall not release such
>
> prisoner if it determines that he has seriously or frequently violated
>
> institution rules and regulations or that there is a reasonable
>
> probability that he will commit any Federal, State, or local crime.

64.     Congress stated that it intended the "mandatory parole" provision in § 4206(d) to provide "*a more liberal criteria [than under 4206(a)] for release* on parole for prisoners with long sentences after they have completed two-thirds of any sentence or thirty years,

---

16 If an inmate is not released following the initial discretionary parole hearing, subsequent proceedings ("statutory interim hearings") are held every two years under the same § 4206(a) criteria. *See* 18 U.S.C. § 4208(h)(2); 28 C.F.R. § 2.14.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 28 -

whichever occurs first." S. Rep. No. 94-648, at 27 (1976) (Conf. Rep.) (emphasis added). Congress explained the purpose of the sections:

> The purpose of [Section 4206(d)] is to insure at least some minimum period of parole supervision for *all except those offenders who have the greatest probability of committing violent offenses following their release* so that parole supervision is part of their transition from the institutional life of imprisonment to living in the community."

H. Rep. 94-648, 94th Cong., 2d Sess. 27, 1976 U.S.C.C.A.N. 351 (emphasis added).

65.     However, if the Commission denies parole under 4206(d), it does not consider release under 4206(a). Under this approach, for Petitioner and the proposed class members, § 4206(d) turns becomes a far harsher standard than § 4206(a). The Commission's finding that a prisoner "seriously" or "frequently" violated prison rules leaves prisoners ineligible for release under § 4206(d) and the Commission then refuses to consider release under § 4206(a), *even though the same rule violations may not bar release under § 4206(a).*

66.     The Commission's rule on mandatory parole is promulgated at 28 C.F.R. § 2.53. Without support in the text of the statute, the Commission's rule states a prisoner denied mandatory parole will serve "until the expiration of his sentence":

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 29 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

2.53 Mandatory parole. (a) A prisoner … shall be released on parole after … completion of 30 years of each term or terms of more than 45 years (including life terms … unless … the Commission determines that there is a reasonable probability that the prisoner will commit any … crime or that the prisoner has frequently or seriously violated the rules of the institution in which he is confined. *If parole is denied pursuant to this section, such prisoner shall serve until the expiration of his sentence less good time.* [Emphasis added].

67. Consistent with the Commission's regulation, a Commission General Counsel's memo of September 22, 2011, states that after serving two thirds of their sentences, inmates are only eligible for release under § 4206(d), not § 4206(a). Memorandum of Commission General Counsel to Commission dated September 22, 2011 (September 22, 2011).

68. 18 U.S.C. § 4208(h)(2) provides that all prisoners are statutorily entitled to Interim Hearings. In order to comply with § 4208, the Commission affords prisoners denied mandatory parole with subsequent Interim Hearings, but provides that all subsequent Interim Hearings will proceed only under § 4206(d) rather than the normal §4206(a) standard:

2.53-06. Subsequent hearings for long-term prisoners denied mandatory parole. If the denial of mandatory parole results in a continuance for the prisoner that exceeds the applicable time period

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241
- 30 -
Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

for an interim hearing (either every 18 or 24 months), the prisoner

must be scheduled for a subsequent interim hearing. *At the interim*

*hearing, the prisoner shall be considered for parole under the*

*mandatory parole criteria of §2.53(a).*

USPC Rules and Procedures Manual 2.53-06 (June 30, 2010) (emphasis added).

69.     In most cases, the effect of conducting subsequent interim hearings

under the mandatory parole criteria of § 4206(d) and C.F.R. § 2.53 is to deny

parole in perpetuity (as rule 2.53 states, "until expiration") because *no relevant*

*fact (i.e. past prison rule violations) under § 2.53 could change between the*

*initial mandatory parole hearing and subsequent hearings*.

70.     In 2014, a Hearing Examiner in this case recommended Petitioner

be paroled in early 2015 pursuant to § 4206(a). The recommendation was based

on Petitioner's rehabilitation and "substantial observ[ance]" of prison

regulations over 28 years. Hearing Summary (August 19, 2014), at 4. This

recommendation was rejected by the Commission solely because of a single

telephone rule violation in 2013. Notice of Action (September 4, 2014).

71.     However, two years later, in the 2016 hearing, under the

Commission's interpretation of § 4206(d), Petitioner's history of substantially

observing institutional regulations as reflected, *inter alia*, in his superior 10

Salient Factor Score and 2014 Hearing Examiner's report, is irrelevant because,

according to the Commission, a 30-year old positive drug test (of questionably

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 31 -

validity), and a handful of relatively minor telephone rule violations, bar release under § 4206(d). *See* (2016 Notice of Action) Appendix 6, at 1.[17]

72.     Nothing in the statutory language or Congressional record supports the Commission's interpretation of § 4206(d) as expressed in the Commission's parole decisions and C.F.R. § 2.53.[18]

**B.     The Commission violated its pre-hearing disclosure obligations.**

73.     Section 4208(b) requires that at least thirty days prior to any parole determination the prisoner shall be provided with reasonable access to any report or document to be used by the Commission in making its determination. 28 C.F.R. § 2.55 provides in relevant part:

> At least 60 days prior to a hearing scheduled pursuant to 28 CFR 2.12 or 2.14 each prisoner shall be given notice of his right to request disclosure of the reports and other documents to be used by the Commission in making its determination ...

---

[17] In 2018 the Commission simply adopts in 2016 decision and repeats that Petitioner was being denied parole because he had "seriously" violated the institution's rules. Appendix 3.

[18] The Commission's interpretation of § 4206 is also inconsistent with the PCRA's statutory scheme because Petitioner and the proposed class members denied release under § 4206(d) are entitled to and afforded subsequent interim hearings every two years pursuant to 18 U.S.C. § 4208(h)(2). These hearings are superfluous if an ancient rule violation forever bars release on parole.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 32 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

(b) Scope of disclosure. *The scope of disclosure under this section is limited to reports and other documents to be used by the Commission in making its determination. At statutory interim hearings conducted pursuant to 28 CFR 2.14 the Commission only considers information concerning significant developments or changes in the prisoner's status since the initial hearing or a prior interim hearing.* 28 CFR § 2.55. Therefore, prehearing disclosure for interim hearings will be limited to such information …

28 C.F.R. § 2.55 (emphasis supplied).

74.     None of these disclosure rules were complied with in Petitioner's case despite requests by Petitioner and his counsel for pre-hearing disclosures.[19] At the 2018 hearing, the written and oral statements of relatives and associates of the crime victims were again considered even though their statements were not used in hearings before 2016, and were not provided to Petitioner prior to the 2018 hearing.

**C.     The Commission violated its regulations and fundamental fairness by considering old evidence it knew about but did not use or rely upon in earlier hearings and decisions.**

---

[19] The Parole Commission's September 23, 2016 response to a FOIA request disclosed that prior to the April 2016 hearing the Commission received letters opposing Petitioner's release, including one from Assistant U.S. Attorney Elliot Jacobson the prosecutor in the case, none of which were disclosed to Petitioner or his counsel prior to the April 2016 hearing. As already noted, the Commission's 2018 denial of parole incorporates its 2016 decision.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 33 -

75.    In 2016 and 2018 the Commission relied on Petitioner's old positive urine test and old telephone rule violations to deny release even though it had not relied on those rule violations in the 2014 and earlier parole hearings.

76.    The Commission's rules state that at subsequent hearings "the Commission only considers information concerning significant developments or changes in the prisoner's status since the initial hearing or a prior interim hearing." 28 CFR § 2.55.

77.    In reaching its 2016 and 2018 decisions to deny release, the Commission relied on a vast set of "facts" (e.g. 2016 statements of the DOJ prosecutor, non-serious old telephone call violations, the 28-year old urine test, etc.) that had *not* been relied upon by the Commission in the initial or numerous interim hearings conducted prior to 2016.

**D.    The 27-year old positive drug test does not, as the Commission claims, statutorily prevent the Commission from releasing Petitioner on parole under § 4206(d).**

78.    Petitioner has had one "serious" rule violation during over 30 years of incarceration: A single positive urine test some 27 years before his parole hearing. That violation, *which the BOP no longer treats as serious but the Commission does*, was the basis for denying parole in 2016 and again in 2018. 2016 Notice of Action, Appendix 6, at 3; 2018 Notice of Action Appendix 3, at

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 34 -

1.[20]

79.    The 1990 urine test reportedly showed the presence of morphine, a

drug not readily available in prisons. Upon being informed of the test, Petitioner

requested to be retested and also offered to take a DNA test. These requests

were denied. To the best of Petitioner's knowledge, in 1990 no retesting was

done and there was no way for an inmate to contest a drug test.[21]

80.    At a July 17, 2002, parole hearing the Hearing Examiner

considered the 1990 positive drug rule violation and stated "[t]he drug offense

will call for 0 to 8 months in the administrative offenses."[22] *Yet in 2016 and*

*again in 2018, fourteen and sixteen years after stating the positive drug test*

*would only adversely impact Petitioner's record for "0 to 8 months," the*

*Commission denied Petitioner parole relying on the same 1990 drug test.* The

Commission has no known rules or policies regarding what inmates must

present to show past rule violations were not serious or should no longer be

---

[20] Petitioners explained in 2016 and again in 2018 why the old one-time drug offense should not be considered a disqualifying factor under 18 U.S.C. §4206(d). *See, e.g.* Appendix 1 at 9.

[21] Petitioner has a FOIA request pending trying to determine whether retesting was ever required by BOP, and the extent to which ancient positive drug tests are ever used by the Parole Commission to find an inmate ineligible for release.

[22] This result tracks the Commission's Parole Rescission Guidelines promulgated in C.F.R. §§ 2.20 and 2.36, which characterize a single instance of drug use as an "administrative rule infraction," the *least* among offenses listed, punishable by no more than eight months extended denial of presumptive parole.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 35 -

treated as serious because of the passage of time or other factors. This has resulted and continues to result in the Commission issuing inconsistent *ad hoc* decisions in this case and proposed class members' cases when weighing the seriousness of past rule.

81.     In the case of *Bowers v. Drew*, Civil Action No. 1:08-CV-2095-WCO (U.S. District Court Northern District of Georgia), the Commission addressed issues involving its application of the term "serious" rule violations as used in § 4206(d). The Commission "focused on … *[1] the gravity of the 1979 escape attempt and [2] whether the passage of time diminished the seriousness of the prison rule violation.*" *Id*. Docket # 141, at 42 (emphasis added). *See also id*. at 44 ("the Commissioners … are not precluded from reaching the conclusion that they did in October 2005 [that the attempted escape was a serious rule violation], … *or they may find that the attempted escape was not so serious*." (Emphasis added)).[23] Had the Commission applied a similar reasoning in this case, it would have found that Petitioner's 28-year old positive urine test for morphine is not a "serious" rule violation that forever precludes release on parole under § 4206(d) (or under § 4206(a) were that section considered). *See* Petitioner's April 18, 2018 letter to the Commission, Appendix

_____

[23] The Commission has granted parole to other escapees (including Sara Jane Moore and Zvonko Busic) and thus has refrained from characterizing all escapes as serious. *Id*., Memorandum of Commission General Counsel to Commission (September 22, 2011), Docket 138-7 at 4.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 36 -

1, at 9-10. [24]

82.     In his Post-Hearing Assessment on which the Commission heavily relies to reach its decision, the Hearing Examiner stated:

> I do not disagree that our General Counsel has advised the Commission may revisit the finding [of a "serious" rule violation] at subsequent hearings, primarily to consider length of time that has passed since the serious rule infraction was committed. However, 4206(d) is silent to this and, in fact, only states that if the Commission finds the subject has committed a serious violation of the rules of the institution, the Commission shall deny mandatory parole. Because of this absolute language, the Commission is not barred from continuing to deny mandatory parole on the basis of seriously violating the rules of the institution, *regardless of the length of time that has passed*.

Post-Hearing Assessment, Appendix 7, at 11 (emphasis added).

83.     The BOP does not treat an ancient positive urine test as a "serious" rule violation for purposes of evaluating an inmates salient score factor. *See*

---

[24] Petitioner cannot identify any case in the Notices of Decision obtained under FOIA where an ancient drug test was used to deny an inmate mandatory parole. Several of the approved mandatory paroles in the Notices of Decision come with the condition that parolee attend mandatory drug and alcohol programs, indicating these prisoners had at least one (if not several) drug or alcohol-related infractions while in custody that were not deemed "serious" for the purposes of release under § 4206(d).

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 37 -

BOP Program Statement, Inmate Security Designation and Custody Classification, P5100.08, Chapter 6, p. 9 (indicates a "positive drug test" *over 5 years old* is not used to determine the inmate's Custody Classification—whereby an inmate is assigned a level of supervision according to their criminal history and institutional behavior/adjustment—or the inmate's "Anticipated Time in Confinement"). *The Commission has never explained why it disregards BOP's interpretation of the seriousness of violations of its own rules*. The "intent of the [BOP's] Custody Classification system is to permit staff to use professional judgment within specific guidelines." *Id*. Chapter 6, p. 2. The Commission's failure to adopt any similar system to permit its Commissioners and staff to use professional judgment within specific guidelines on critically important release criteria—including standards about how the Commission decides whether rule violations are "serious" or "frequent" so release under § 4206(d) should be denied — is what leads to arbitrary and unreasonable decision-making in this and similarly situated cases.

**E.   A 5-year old brief phone call to university students urging them to support peaceful social change does not disqualify Petitioner for release nor does it indicate Petitioner is likely to reoffend. The BOP charge should be vacated because BOP destroyed key evidence, denied access to an appeal, and the Hearing Officer was not qualified under BOP's extant rules.**

84.    In its November 2016 decision, the Commission cited what it called Petitioner's "most serious incident" involving a February 5, 2013

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 38 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

telephone call to a group of university students. Notice of Action (November 25, 2016) at 2. The Commission's 2018 decision incorporates its 2016 decision.

85.    The facts are not in dispute. On February 5, 2013, Petitioner, at the invitation of professor Karin Stanford, placed a phone call to Professor Stanford who placed the call on her speaker phone and invited Petitioner to say a few words to a group of students and professors gathered to hear actor/producer Danny Glover speak and screen one of his films. Professor Stanford was on Petitioner's approved phone call list and had visited him before this phone call.

86.    The sworn declaration of Professor Stanford that is part of the Commission's record provides insight into Petitioner's core beliefs and the arbitrariness of the Commission's reliance on the phone call to find Petitioner is likely to reoffend if released on parole:

On February 5, 2013 … CSUN's Department of Pan African Studies
… co-sponsored a symposium … with … Danny Glover (actor and
producer) who was screening his new Oscar-nominated documentary
… *During a [previous] phone call with Mutulu Shakur … I invited*
*him to call-in to my cell-phone during the event to participate briefly*
*in the discussion.*  During the symposium Mutulu Shakur called …
and I placed him on my phone speaker. He very briefly spoke about
his ideas for the Truth and Reconciliation Commission, historical
aspects of the civil rights movement, … the need to remember the

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 39 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

sacrifices of civil rights workers who were killed in the woods of

America, … how the people have chosen the electoral process and

elected President Obama as a means to get economic, medical and

political relief, and again he returned to the peaceful process for

addressing healing he has long supported as a tool to resolve conflict

*… Mr. Shakur's contribution to the event was positive and he was a*

*voice for healing and reconciliation, which I am very glad students*

*had the opportunity to hear. At no time did Mr. Shakur say anything*

*that was an incitement to violence or criminality. On the opposite, his*

*message was one of working within the system to achieve healing and*

*reconciliation …*

Declaration of Dr. Karen Stanford (April 3, 2016) (emphasis added).

87.    The following day, February 6, 2013, BOP Officer G. Odell

monitored the previously recorded call and submitted an incident report,

charging Shakur with violation of 28 C.F.R § 541.3 (212), engaging in a "group

demonstration," and 28 C.F.R § 541.3 (297), using the telephone to circumvent

the ability of staff to monitor the content of the call or the number called.[25] In

fact, the number called and content of the call were fully monitored.

88.    On February 11, 2013 Petitioner received a Notice of Discipline

---

25 The only incidents of which Petitioner is aware involving violations of
§ 541.3 involve inmates using codes in their conversations to avoid monitoring.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241                                                                              Center for Human Rights & Constitutional Law
                                                                                                              256 S. Occidental Blvd.
                                                                                                            Los Angeles, CA 90057
                                                                                                                    213/388-8693
- 40 -

Hearing before a Disciplinary Hearing Officer ("DHO") for the alleged

violations of "use of the telephone for abuses other than criminal (§ 212) and

engaging in or encouraging group demo (§ 297)". Notice of Discipline Hearing

Before the DHO (February 11, 2013) at 1. The allegation of engaging in a

"group demonstration" was soon dropped when BOP realized the call was to a

group of students at a university meeting.[26]

89.     Despite Petitioner's request that the recording of his phone call be

preserved for review by his BOP staff representative and the Disciplinary

Hearing Officer, his request was denied. *The recording was erased before his

disciplinary hearing was conducted*.[27]

90.     On March 13, 2013 a DHO Hearing was held, presided over by

DHO Officer Diana Elliott.

91.     After being found guilty of violation a telephone rule, hearing

Petitioner was booked into administrative segregation (solitary confinement).

_____

[26] Petitioner requested to have a staff representative, Rec Spec Weeks, and two
witnesses, Sia Castillo, who could testify as a "phone monitoring expert", and
Rec Spec Weeks, who could testify to Petitioner's role "on the compound in
keeping the peace."

[27] Spoliation is the destruction or significant alteration of evidence, or the
failure to preserve property for another's use as evidence in pending or
reasonably foreseeable litigation. In this case (1) the missing evidence existed at
one time; (2) BOP had a duty to preserve the evidence; and (3) the evidence was
important to Petitioner 's being able to prove his innocence of the alleged phone
rule violation.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 41 -

He was not served with a copy of the DHO decision.[28] While in solitary confinement, Petitioner wrote to Director of the Bureau of Prisons, Charles J. Samuels, to request an extension to file an appeal from the DHO's decision. Upon release from solitary confinement, Petitioner submitted a regional administrative appeal on June 13, 2013, citing due process violations, freedom of speech, and objecting to the incident report for "failing to specify or identify any act of misconduct." Even though he had not been served with the DHO's decision, tolling the period to appeal, and had been held in solitary confinement, the appeal was rejected as untimely.[29]

92.     On April 20, 2016, the phone violation was used as a key basis to deny Petitioner mandatory parole. In 2018 the Commission denied parole

---

[28] Pursuant to 28 C.F.R. § 542.14(d)(2), "DHO appeals shall be submitted initially to the Regional  Director for the region where the  inmate is currently located." 28 C.F.R. § 542.14(d)(2). The submission period for DHO Appeals is "20 calendar days of the date the Warden signed the response" and "Appeals to the Regional Director shall be … accompanied by one complete copy or duplicate original of the institution Request and response." BOP Policy § 542.15(a) and (b).

[29] Petitioner next submitted a central office administrative appeal dated August 19, 2013. Central Office Administrative Remedy Appeal, dated August 19, 2013, pg. 1. Petitioner attached a signed Form A0148 (request to Staff) from his counselor, Counselor Prieto, verifying that the DHO report had not been provided to the Unit Team and/or inmate as of on July 28, 2013. On April 10, 2018 the BOP's Regional Director denied Plaintiff's administrative appeal indicating that after an investigation Plaintiff's allegations were without merit and Plaintiff would not be receiving relief from his disciplinary action.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 42 -

incorporating its reasons for denying parole in 2016.[30]

93.    Petitioner seeks an Order vacating the rule violation because (1) the phone call did not violate any known rule issued by the BOP, (2) the key evidence (recording of the telephone call) was destroyed prior to the disciplinary hearing despite Petitioner requesting that the evidence be preserved, and (3) the BOP circumvented Petitioner's ability to administratively appeal the rule violation by running the clock on his time to appeal while he could not submit his appeal to anyone.

**F.    The Commission has failed to adopt or apply any known standards on the meaning of "frequent" rule violations. A handful of old telephone rule violations over 30 years do not show Petitioner "frequently" violated prison rules or is likely to reoffend if released on parole.**

94.    Section 4206(d) provides that a prisoner shall not be granted mandatory release if he has "frequently violated institution rules." On the other hand, a prisoner may be granted discretionary release under § 4206(a) even if he

---

[30] On July 10, 2017 Petitioner resumed his efforts to have the 2013 rule violation set aside. He submitted a new request for informal resolution of the rule violation.  On August 3, 2017 Petitioner submitted a request for administrative remedy to the Warden. On September 25, 2017, Petitioner submitted a regional administrative appeal. On October 31, 2017 Petitioner submitted a central office appeal. On January 11, 2018 Petitioner submitted a regional administrative appeal. Despite these efforts, the BOP has not set aside Petitioner's 2013 telephone rule violation that the Parole Commission found was his "most serious" violation warranting denial of parole in 2016, a decision the Commission incorporated into its 2018 decision.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 43 -

has frequently violated institution rules depending on the seriousness and age of those violations.

95.     The Notice of Action dated November 25, 2016 (incorporated into the Commission's 2018 denial of parole) concludes that four alleged non-serious telephone rule infractions in about twenty-eight (28) years, show that Petitioner has "frequently" violated institution rules and therefore is statutorily ineligible for release under § 4206(d), and these four telephone rule violations also indicate he will reoffend if released.[31]

96.     "Frequent" means "occurring often or in close succession; habitual; constant." *The Oxford Desk Dictionary* at 321. Four or five phone violations over a period of thirty (30) years by any rational interpretation does not involve "frequently" violating prison rules. *This amounts on average to a minor rule violation once every seven years in custody*. Congress would not have called § 4206(d) a "more liberal" approach to release on parole if four phone calls that would not block release under the normal standard of § 4206(a), permanently block release under § 4206(d).

97.     The Commission has failed to issue standards or rules consistently applied to Petitioner and proposed class members regarding how it interprets

---

[31] The two 2007 telephone infractions involved attempted "outreach to the public" without authorization because the phone call involved an *anti-violence* music CD project.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 44 -

the term "frequently." Petitioner and proposed class members have no idea what standards the Commission follows when deciding that an inmate has "frequently" violated prison rules such that they are, in the Commission's view, forever ineligible for release on parole under § 4206(d).

98.     As explained at the 2016 and 2018 hearings, in each instance the phone calls at issue involved Petitioner encouraging non-violence, anti-gang messaging, healing and reconciliation. The few 2001 and 2007 telephone calls involved a music project that included an anti-gang/anti-violence message.

99.     None of the phone calls were deemed "serious" rule violations by BOP.[32]

100.    The Commission also unreasonably and without explanation concluded that these 4 non-"serious" rule violations establish that Petitioner is likely to commit new crimes if released on parole. As the record shows, Petitioner has for many years been a voice advocating for non-violence and peaceful social change. Detailed information regarding his well-known ideas in this regard were presented and referenced at Petitioner's 2014, 2016 and 2018 parole hearings. The Commission's failure to adopt a consistent rule on what it

---

[32] The BOP defines a "serious" telephone rule violation when an "inmate … utilizes the telephone to further criminal activities or promote illicit organizations…." BOP Program Statement, Inmate Security Designation and Custody Classification, P5100.08, Chapter 5, page 10. These include, for example, utilizing the telephone "to communicate threats of bodily injury, death, assaults, or homicides," or to arrange "narcotic/alcohol" deals. *Id*. at 11.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 45 -

means to "frequently" violate prison rules frustrates what Congress sought to achieve: "[T]o assure … imprisoned inmates that parole decisions are openly reached by a fair and reasonable process after due consideration has been given [all] salient information." Conference Report, Cong Rec Feb 23, 1976, page H1222.

101.    In its summary of the final rules published in 1978, the Commission stated: "the Commission will consider the facts underlying each case to determine the severity of the institutional misconduct and will base its parole decision on that independent assessment." 43 FR 38822 (October 1, 1978).

102.    In its 2018 decision, the National Appeals Board (aka the Commission) erroneously stated:

> The Board notes that the Commission [one and the same three people] made no such finding previously that your infractions were 'frequent.' Instead, the Commission found that you seriously violated the rules of the institution and such a finding was reasonable. As you are aware, your positive drug test is a "l00" level infraction (most serious level in the BOP). This fact and the *nature and circumstances of your other infractions*, were reviewed and formed the basis of the opinion that you have seriously violated the rules of the institution.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 46 -

Notice of Action on Appeal (July 25, 2018), Appendix 5, at 3 (emphasis supplied). The only "other infractions" are the non-serious telephone rule violations the Commission relies on to deny parole.

103.   In this case the Hearing Examiner and the Notice of Action fail to consider "the severity of the institutional misconduct" and instead rely upon infrequent and BOP-defined minor telephone rule violations to trump an otherwise exemplary history of conduct in order to reach a predetermined outcome. The Commission also relies on old telephone rule violations not considered at earlier parole hearings in violation of the Commission's own rules and fundamental fairness.[33]

**G.    The Commission unreasonably concluded Petitioner is likely to reoffend if released on parole because he sometimes in the past referred to himself as a "victim" of the FBI's illegal COINTELPRO program**

104.    In 2016 Petitioner was denied release on parole in part because he has referred to himself as a "victim of the government's counter-intelligence program" and this, according to the Parole Commission, indicates he is not rehabilitated and is likely to commit crimes if released. 2016 Notice of Action

---

[33] The Commission's rules state that it will "only considers information concerning significant developments or changes in the prisoner's status since the initial hearing or a prior interim hearing." 28 CFR § 2.55.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 47 -

at 1.[34] As noted above, the Commission incorporates its 2016 findings into its 2018 decision again denying parole.

105.    Despite being in the record, and being brought to the Commission's attention in 2016 and again in Petitioner's pre-hearing submission in 2018 (Appendix 1), the Commission ignored the fact that Trial Judge Haight, Jr. stated in this case that documents obtained under the FOIA "demonstrate that for a considerable time Shakur …[has] been the subject of illegal surveillance, harassment, and disinformation by the FBI as part of that lamented, unconstitutional project known as COINTELPRO." *United States v. Shakur*, 1988 U.S. Dist. LEXIS 2762, pp. 16-17 (1988).[35] A federal judge has recognized that Petitioner *was* a victim of the COINTELPRO program, but the Commission, ignoring the record, denied parole because Petitioner "considers" himself to be a victim of the COINTELPRO program.

---

34 "Additionally, you take no responsibility for the crimes for which you were convicted [because] [i]nformation on your website, including your writings and in a recent letter you wrote to your supporters in 2014, indicates you routinely refer to yourself as a … 'victim' of the government's counter-intelligence program." *Id.*.

35  In no prior Notice of Action has the Commission ever argued that a reason to deny parole is because Petitioner has stated he was a "victim" of COINTELPRO before he was convicted. Raising this now, for the first time in twenty years, shows the arbitrariness of the Commission's action in this case and violates the Commission's rules at 28 CFR § 2.55.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 48 -

106.   In addition, despite its rule at 28 CFR § 2.55 stating that at subsequent hearings "the Commission only considers information concerning significant developments or changes in the prisoner's status since … a prior interim hearing," the Commission denied parole in 2016 and seemingly again in 2018 because Petitioner in the past sometimes referred to himself as a victim of the COINTELPRO program even though the Commission had not in previous hearings relied on this reason to deny parole.

107.   Petitioners' claim that he was a victim of COINTELPRO is an accurate and truthful statement and does not show in any way that he is likely to reoffend if released on parole.

**H.   The Commission unreasonably concluded Petitioner is likely to reoffend if released on parole because he has sometimes referred to himself as a "political" prisoner.**

108.   The Commission also denied parole because Petitioner has occasionally referred to himself as a "political prisoner." Notice of Action (April 2016) at 1 ("Information on your website, including your writings and in a recent letter you wrote to your supporters in 2014, indicates you routinely refer to yourself as a … political prisoner …"); *see also* Notice of Action (November 2016) at 2 ("Specifically, you refer to yourself as  … a 'political prisoner'").

109.   Petitioner's April 18, 2018 pre-hearing submission to the Commission reiterated his oft-repeated position in 2016: "… Mr. Shakur has

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 49 -

respected every stage of the criminal justice process throughout 30 years of litigation and incarceration. *He has never argued that his conviction is "political" in nature or that his conviction was politically motivated*. He has fully accepted his conviction." Appendix 1, at 11 (emphasis added).

110.   During the trial, U.S. District Judge Charles S. Haight, Jr. repeatedly acknowledged the political nature of Petitioner's history, circumstance, motivation, and intentions related to his conviction. The District Court described Shakur's trial defense as follows:

> Shakur's defense had at its core the proposition that while his *political* goals were to further the fortunes of African-Americans, his means were peaceful and law-abiding, rather than violent and criminal. While Shakur did not testify in his defense, he called 26 witnesses, the majority of whom testified about Shakur's public, *political*, and non-violent activities, extending over a number of years, and the concerns about governmental persecution that Shakur harbored as a result.

*Shakur v. United States*, 32 F. Supp. 2d 651, 665 (SDNY Jan. 13, 1999) (emphasis supplied).

111.   Petitioner's "political" goals and activities were understood and accepted by trial judge Haight, Jr., even if they did nothing to mitigate Petitioner's guilt. Petitioner, other prisoners, BOP staff, and others outside of prison have all at times referred to Petitioner as a "political" prisoner because

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 50 -

the activities in which he engaged leading up to his conviction were motivated by political beliefs, and because inmates who serve as mediators and act to diffuse interracial inmate gang hostilities are known as political prisoners.[36]

112.   The BOP and the Commission were aware that for over twenty years Petitioner occasionally referred to himself as a political prisoner, yet the Commission never previously relied on that information to deny him parole. This indicates the Commission's reliance on this phrase to deny parole is pretextual.

113.   In its 2018 denial of parole, the National Appeals Board [aka the Commission] stated: "Though you posit that your use of the term 'political prisoner' has varying meaning, it is reasonable for the Board to adopt the one that would suggest a failure to fully accept responsibility." Notice of Action on Appeal (July 25, 2018), Appendix 5, at 3-4. In the "mandatory" release provision Congress enacted in § 4206(d), it did not include as a criteria an inmate "fully accept responsibility." The Commission adopts a criteria not

---

[36] Petitioner explained in his pre-hearing submission that "[t]he day to day functions of mediation, conciliation, conflict resolution inside the prison structure are referred to as 'politics' and those who engage to have impact on their environment are considered 'political prisoners' (rather than 'shot callers' 'MOB Boss' etc.)." Appendix 4, at 8. "Mr. Shakur is viewed by many as a 'political prisoner' because of his character, values and moral acts employed during his 30 years of incarceration … [H]is continued efforts to encourage alternative health care, an equitable criminal justice system, anti-gang violence and a TRC [Truth and Reconciliation] process for healing …" *Id.*

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 51 -

included by Congress in the statute, and then, despite Petitioner having stated

for many years that he accepts responsibility for the crimes, concludes that his

rare use of the term "political prisoner" somehow evidences that he has not

accepted full responsibility for his crimes, and that, in turn, despite

overwhelming and concrete evidence to the contrary including from BOP,

shows that he is likely to reoffend if released on parole. Appendix 5. The

Commission's conclusion possesses no rational or factual basis. As noted

above, it is also a violation of the Commission's rules.[37]

**I.      The Commission unreasonably concluded Petitioner is likely to reoffend if released on parole because he has occasionally ended letters with the salutation "stiff resistance".**

114.   Petitioner was denied parole in 2016 because on two known

occasions he ended letters or communications with the salutation "stiff

resistance." Notice of Action (April 2016) at 1. In its 2018 denial of parole, the

Commission adopted its 2016 decision.

115.   As Petitioner explained in 2016:

My salutation "stiff resistance" purpose has been to serve as a

reminder and to fortify an individual's character and resolve in the

face of their specific challenges. The objective of "stiff resistance" is

---

[37] In no prior Notice of Action has the Commission ever argued that a reason to deny parole was because Petitioner had sometimes referred to himself as a "political prisoner." Raising this now, for the first time in twenty years, is fundamentally unfair and violates the Commission's rules at 28 CFR § 2.55.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 52 -

now and has always been about the quality of life. I have never

intended its use to encourage criminality or terrorism, to target the

government.

Mutulu Shakur Statement submitted to the Commission (May 19, 2016).

116.   As Petitioner explained to the Commission in his 2018 pre-

hearing submission, many groups with entirely lawful goals use the age-

old term "resistance." The "Culture of Resistance Network" aims to

promote and support organizations, activists, and artists who seek a more

peaceful, just, and democratic world. "Critical Resistance" through its

outreach works toward creating "lasting alternatives to punishment and

imprisonment." The goal of "Bay Resistance" is to advance racial,

economic, climate, and gender justice. In May 2017 the media reported

Hillary Clinton was establishing a "Resistance" Political Action

Committee. Appendix 1 at 12. *See also* 2018 Petition for Reconsideration,

Appendix 4, at 5 (Petitioner explains words stiff resistance used "to

encourage personal fortitude; … and to stand firm against daily challenges

and difficulties.")

117.   Petitioner advised the Commission in writing in 2016 and

again in 2018 that because of its misinterpretation of the salutation "Stiff

Resistance" (used twice by the Petitioner in correspondence years ago),

and to avoid anyone else misinterpreting this salutation, *Petitioner had*

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 53 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

*stopped using it*. Despite the irrationality of using this salutation as a basis to deny parole even in 2016, the Commission uses it again in 2018 *even though it knows Petitioner stopped using that salutation two years earlier*.[38]

118.   Congress could not possibly have intended that in denying parole the Commission would ignore an inmate's *substantive message of peace and conciliation* for several decades and focus instead on a salutation at the close of *two letters* to keep a rehabilitated inmate in prison likely until he dies.

119.   Despite its rule at 28 CFR § 2.55 stating that at subsequent hearings "the Commission only considers information concerning significant developments or changes in the prisoner's status since … a prior interim hearing," the Commission denied parole in 2016 and 2018 because Petitioner on two occasions ended letters or communications with the salutation "stiff

---

[38] Despite Petitioner having advised the Commission in 2016 in his Petition for Reconsideration, and again in 2018 in his pre-hearing submission, and again at his 2018 hearing, that he had stopped using "Stiff Resistance" as a salutation in mid-2016, the National Appeals Board (aka the Commission) denied Petitioner's 2018 Petition for Reconsideration because: "The Board finds it reasonable for the Commission to consider these past statements to be incompatible with the goals and conditions of supervision as well as evidence that you have not truly disavowed yourself from the set of beliefs you had when you were convicted for your role as a leader in the racketeering conspiracy." Notice of Action on Appeal (July 25, 2018), Appendix 5, at 3.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 54 -

resistance," even though the Commission had never previously relied on this

reason to deny parole.

**J.     The Commission unreasonable found that Petitioner has not accepted responsibility for the crimes**

120.    According to the Hearing Examiner's Post Hearing Assessment,

when asked if he "admitted to his offense conduct, the subject stated that he

admits and accepts responsibility." Post-Hearing Assessment (May 11, 2018)

attached as Appendix 7, at 1. Petitioner also "stated he is remorseful." *Id*. at 4.[39]

121.    In his statement at the hearing, Petitioner said: "I understand that no

one else is to blame for my participation in these crimes – I am responsible for

my choices. I understand that I alone must accept responsibility for my crimes

… I feel deep … remorse for my crimes." Appendix 2, at 1-2.[40]

122.    In identical words the Hearing Examiner's 2018 post-hearing

assessment, and the Commission's 2018 denial of parole, state:

---

[39] "He acknowledged the pain of the victims, stating, 'they have no room to forgive,' and 'forgiveness is not in their paradigm.' He says he accepts that. He says, 'death and loss is a powerful experience and the residual effect through generations is real.' He said he understands their hate, but says it hurts him to know he is responsible." *Id*. at 4.

[40] See page 6 *supra* for a fuller quote of Petitioner's statements regarding acceptance of responsibility. At the May 2016 hearing in response to questioning by the Hearing Examiner, Petitioner stated without equivocation: "I am guilty of the crimes I have been convicted of. All of them."

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 55 -

> The Commission has considered your statement at this hearing in which you *now, for the first time ever, admit culpability for your offenses* of conviction and accept responsibility for your actions. The Commission has considered whether this is new information that warrants a change in its previous decision but has determined you lack credibility in making such a statement. *The Commission finds the timing of your new statement suspect and further finds it to be self-serving and disingenuous.*

Post-Hearing Assessment, Appendix 7, at 10; 2018 Notice of Action, Appendix 3, at 1 (emphasis added). *See also* Notice of Action on Appeal (July 25, 2018), Appendix 6, at 1 ("at your May 2018, hearing … you, for the first time, admitted your involvement in the offense conduct").

123.   This was not "the first time ever" that Petitioner accepted responsibility for the underlying crimes. Over the last three decades Mr. Shakur has increasingly demonstrated acceptance of responsibility. Petitioner has for many years accepted responsibility and expressed remorse for the crimes at his parole hearings and on his web site.

124.   For example, in his 2016 hearing, when asked by the Hearing Examiner whether he was part of the conspiracy in the crimes of which he was convicted, Petitioner responded "I was involved in that conspiracy and I don't

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 56 -

deny that."[41] The Hearing Examiner in 2016 said to the Petitioner: "You're convicted in a conspiracy. In a conspiracy you don't have to be the shooter to be guilty, you are still responsible for the crime. You would be in a position in terms of overall responsibility for the crime. You understand that?" Petitioner responded: "I truly understand that. I've had to live with that for 30 years and I have changed." The Commission's rejection of Petitioner's acceptance of responsibility based on the erroneous observation that 2018 was the "the first time" he "ever" accepted responsibility was clearly erroneous.

125.   In § 4206(d) Congress did not mention "acceptance of responsibility" as a factor to be considered. However, the Commission may consider acceptance of responsibility as it may relate to the likelihood to reoffend, a factor to be considered under § 4206(d). However, in this case the record shows that (1) Petitioner has accepted responsibility for his crimes for many years, (2) there is no basis for the Commission to conclude that Petitioner's acceptance of responsibility is "suspect" and "disingenuous," (2018 Notice of Action at 1), and (3) the overwhelming and uncontradicted evidence of record (including the uncontradicted statements of BOP staff and high officials) shows Petitioner is fully rehabilitated and based on his 30 year incarceration

---

41 In his 2016 hearing Petitioner also stated "I'm glad that the victims' families are here because there is a need for me to represent to [them] …[my] sympathy and remorse for their families and their loss."

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 57 -

record, it is extremely unlikely Petitioner will ever reoffend regardless of the

alleged "recency" of his acceptance of responsibility in Commission hearings. In

this case overwhelming and uncontroverted evidence showing Petitioner will not

reoffend if paroled was outweighed by the Commission's unsupported

conclusion that Petitioner's acceptance of responsibility was "suspect" because

of its alleged recency.

**K.   The Commission erroneously and unreasonably concluded there was no new evidence or change in circumstances between Petitioner's 2016 and 2018 parole hearings to warrant release on parole.**

126.   Petitioner's April 18, 2018 prehearing submission to the

Commission provided significant new evidence that warrant Petitioner's release

on parole. The submission included, for example, a letter executed by Associate

Warden S. Keilman recommending parole of Petitioner:

> In review of Shakur's institutional record it is apparent that his age and
>
> lack of violence (or other disciplinary issues) indicate a desire towards
>
> his rehabilitation. I am aware of the controversy related to a previous
>
> telephone incident [a single 2014 call to university students urging
>
> constructive political engagement] used as a basis for his 2016 parole
>
> denial and it is my professional opinion conduct related to his 2013
>
> Code 297 phone incident report does not reflect a lack of rehabilitation
>
> or a disrespect for institutional policies and authority.
>
> *… I offer this letter as a recommendation for the parole of Inmate*

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 58 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

*Shakur based on my observations and interactions with him. My years*

*of experience with the Bureau has made me quite astute to the judgment*

*of men and their character. I sincerely believe if given the opportunity,*

*Mr. Shakur will not re-offend and will abide by the law and be an asset*

*to the overall environment and community.*

Letter from Associate Warden Keilman (April 9, 2018), Appendix 1,

Exhibit 1 (emphasis added).[42]

127.   Additional new evidence addressed a realistic reentry plan

for Petitioner including firm offers of employment. The Center for Human

Rights and Constitutional Law wrote that "because of his interest and

long-time advocacy for peaceful resolution of disputes and racial and

economic justice, the Center for Human Rights and Constitutional Law

would be pleased to have Mr. Shakur work with the organization half-

time." Appendix 1 at 3.[43]

---

[42] In addition, BOP staff testified at the May 2016 hearing that over the previous two years Petitioner presented no management problems, no disciplinary problems, had positive rapport with and was respectful of BOP staff, and that his work as an prison orderly was good.

[43] The Center for Human Rights job offer letter further stated: "We have dedicated hundreds of hours researching the achievements of truth and reconciliation efforts around the world and look forward to Mr. Shakur's positive involvement in our work. We are fully prepared to compensate Mr. Shakur with a half-time salary of $15,000 per year." *Id.*

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 59 -

128.    The Asian American Drug Abuse Program wrote an offer

employment letter which states in part: "[Petitioner's] skills and

experience with community organizing and his ability to connect with

young African American high-risk youth would also be an important asset

in the work we do. It is for this reason that we would like to employ him

in our Outreach Services Program … This position will be based at our

Center on Crenshaw Boulevard, which is easily accessible from the

residence of his son where he would be living. He may work in this

position full or half time …" Appendix 1 at 4.

129.    Petitioner's daughter, Sekyiaw Shakur, provided new evidence as

follows:

Tupac Shakur was my brother and my father's stepson. In my work

for the Tupac Amaru Shakur Foundation, I focus on community

engagement and speak to abused women and children on overcoming

adversity. Since his incarceration, my father has expressed his

remorse for his past crimes. My father has taught me (and he taught

Tupac) that positive social change comes about not through crimes or

violence, but by promoting peace and healing … [My father] *has*

*become known to many throughout the country not as Mutulu Shakur*

*the man involved in violent bank robberies to further political causes,*

*but as Mutulu Shakur, the man who speaks out against gang violence,*

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 60 -

*against inmate-on-inmate violence, … and in support of empathy, understanding and healing.* That's who my dad is now.

Appendix 1 at 4-5.

130.　New evidence was offered in the form of a letter by Reverend Anthony Evans, President of the National Black Church Initiative, along with 70 other faith based leaders, who wrote in part:

> … [Petitioner] has consistently promoted and supported the peaceful resolution of social conflicts. Use of the salutation "stiff resistance" [a factor considered by the Commission in 2016] in no way invokes the notion that Dr. Shakur was encouraging others to engage in lawless behavior. *To dissuade the Commission from this misunderstanding, … Dr. Shakur has even stopped using the salutation "stiff resistance."* … There are many examples of individuals engaging in "stiff resistance" to personal failure, bad habits, selfishness or even the temptation of crime.

Appendix 1 at 5 (emphasis added).

131.　Despite the submission of this array of new evidence, including a letter from a top BOP official and testimony by BOP staff all making clear that Petitioner's positive institutional conduct made it extremely unlikely he will reoffend if released on parole, the Commission denied parole concluding that "the Commission finds that there have been no significant developments or

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 61 -

changes in your case as to warrant a change in the previous decision to deny mandatory parole and continue [your incarceration] to expiration [of your 60 year sentence]." May 2018 Notice of Action, Appendix 3, at 1. *See also* July 2018 Notice of Action, Appendix 5, at 1 (same). The finding that the evidence presented disclosed "no significant developments or changes" in Petitioner's case was arbitrary and unreasonable.

**L.      The Commission's consideration of and retaliation against Petitioner's non-violent, protected political speech violates the First Amendment.**

132.     By denying Shakur parole on the basis of his use of the phrases "stiff resistance" and "political prisoner" and his criticism of the FBI's illegal COINTELPRO, the Commission not only considered evidence irrelevant to Petitioner's release pursuant to § 4206(a) or (d), it unconstitutionally retaliated against Petitioner's protected speech.

133.     Congress intended that mandatory parole apply to all prisoners eligible under § 4206(d) "except those offenders who have *the greatest probability of committing violent offenses* following their release so that parole supervision is part of their transition from the institutional life of imprisonment to living in the community." Joint Explanatory Statement, H.R.Rep.No.5727, 80th Cong., 1st Sess. reprinted in [1976] U.S.Code Cong. and Admin.News, pp. 335, 360 (emphasis added).

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 62 -

134.    The Commission's conclusion that Petitioner's non-violent protected speech is a basis for denying him parole under § 4206(d) is arbitrary, capricious and a violation of the limited First Amendment rights prisoners possess.

**M.    The Commission considered and included irrelevant testimony from AUSA Jacobson and retired FBI Agent Mitchell on Petitioner's post-conviction conduct during his over 30 years of federal custody and on Petitioner's likelihood to commit violent offenses upon release.**

135.    Permitting the lengthy and one-sided testimonies of Assistant United States Attorney Elliott Jacobson and retired FBI Agent David Mitchell, at the 2016 hearing, and AUSA Jacobson's statements in the 2018, violated § 4206(d) and due process inasmuch as Petitioner had no prior knowledge that these written statements and oral testimonies would be considered by the Commission, their statements went far afield of the conduct charged in Petitioner's case, and they were not in a position to authoritatively comment on Petitioner's *current* level of remorse or rehabilitation, or his prison rules violations that may reflect on his likelihood to reoffend.[44] Petitioner and his

---

[44] *See, e.g.* Jacobson letter to USPC dated March 14, 2016, at 4-5 ("Although Shakur has spent the last thirty years in prison, he shows no signs of being rehabilitated. To our knowledge Shakur has: never admitted his guilt; never expressed one iota of remorse for the many victims of his murderous and prolonged crime spree; and never once rejected the violent tactics and ideology that resulted in his arrest and conviction."); *Id.* at 5 ("Nor is there anything in his … post-trial conduct that indicates he is inclined to do anything other than to pick up where he left off when he was arrested in 1986. … There is every reason to believe that notwithstanding the many years he spent behind bars and his age,

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 63 -

representative were not informed of the written statements submitted by

Jacobson and Mitchell or their intent to provide oral testimony until the dates of

the hearings on April 7, 2016, and May 3, 2018.

136.   The Hearing Examiner's Post Hearing Assessment states in part:

"Victim(s) provided written or telephonic communication prior to the hearing."

Appendix 7 at 4. These statements were not provided to Petitioner prior to the

hearing as required by the Commission's regulations.

137.   Allowing testimony and written statements from law enforcement

officials about the post-conviction conduct of the Petitioner almost *thirty years*

*after these officials were involved in the case* was unfair and indicates an

inappropriate delegation of discretionary authority.[45]

---

Shakur presents a serious danger to the law abiding community if he is released on parole."); Mitchell letter to USPC dated March 24, 2016, at 4 ("Mutulu Shakur … continues to profess … that he is a 'political prisoner,' wrongfully targeted by the FBI. The evidence presented at trial and statements by his co-conspirators directly and convincingly contradict this absurd position." This "absurd" position was in fact, as noted *supra* at ¶ 105, the position of the criminal trial judge).

[45] The legislative history indicates Congress intended "that parole decision making be independent of … the investigative and prosecutorial functions of the Department of Justice." S. Rep. No. 94-648, at 21 (1976) (Conf. Rep.). This independence was intended by Congress to "guard against influence in case decisions." S. Rep. No. 94-369, at 20 (1975). However, here the Parole Commission granted undue authority to the prosecutor and investigator over matters outside their purview, such as Petitioner's post-conviction institutional conduct and Petitioner's current state of mind.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 64 -

138.    Despite its rule at 28 CFR § 2.55 stating that at subsequent hearings "the Commission only considers information concerning significant developments or changes in the prisoner's status since … a prior interim hearing," the Commission denied parole in 2016 and incorporates its 2016 decision into its 2018 decision based in part on the statements of Jacobson, Mitchell and other victims' relatives and associates even though prior to 2016 the Commission had never relied on these statements to deny parole. Nor did these statements remotely address "significant developments or changes in the prisoner's status since … a prior interim hearing."

**N.** **Data released by the Commission under the FOIA shows that the Commission has applied alleged rule violations far differently in Petitioner's case than in any other federal inmate's case.**

139.    In their FOIA Response dated September 23, 2016, the Parole Commission provided Petitioner with Notices of Action for every Mandatory Parole Decision that the Commission issued in the past 24 months.

140.    The Notices of Action issued by the Commission over a two year period show that when the Commission denied a prisoner parole based on "frequent" rule violations, the mean number of violations was 20.5 with the highest number being 53 and the lowest being 7.[46] *In contrast, Petitioner has a*

---

[46] In the case of the prisoner denied mandatory parole for 7 rule violations, nearly all of the offenses involved serious acts of violence, including killing multiple inmates, several assaults, possessing weapons, and threatening bodily harm.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241
- 65 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

*handful of minor rule violations in 28 years.* With regard to Petitioner's single, 27-year old "serious" violation for a "positive" urine test, it appears that not one prisoner was denied parole based on a single rule violation involving drugs. In every case in which the Commission cited drug use as a basis of denial, it was either for frequent drug abuses or it was followed by a violent offense. Petitioner has never incurred a single rule violation involving violent speech or conduct in over 30 years of Federal incarceration.

**O.    The Commission failed to take into consideration the Comprehensive Risk Assessment Report regarding Petitioner's rehabilitation**

141.    Petitioner's pre-hearing submission urged the Commission to consider the Comprehensive Risk Assessment Report prepared by Dr. Jonathan Mathew Fabian, Psy.D, J.D., ABPP.[47] Dr. Fabian reports in relevant part: "There was no elevation for psychopathy or severe criminal personality. There was no clinically significant elevation for intra/interpersonal problems, alcohol/drug problems, aggression or negative social influences." Forensic Psychological Evaluation, Forensic

---

47 In evaluating the Petitioner, Dr. Fabian administered and considered several well established tests/criteria including the Federal Post-Conviction Risk Assessment, Level of Service Inventory-Revised (LSI-R), the Hare Psychopathy Checklist-Revised (Hare PCLR), and the Inventory of Offender Risk, Needs, and Strengths (IORNS). These are all tests commonly used by law enforcement agencies, courts and experts to assess the risk of someone offending if released from custody on probation or parole.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Neuropsychological Evaluation, Pre-Parole Risk Assessment at 15.[48] It is

Dr. Fabian's opinion that his score on the Hare PCL-R is about 7,

indicating very low and no significant anti-social and psychopathic

personality traits. *Id*. at 14.

142.   Dr. Fabian concludes: "[Today the Petitioner] is more an advocate

of equal human rights through peaceful means … He has not been involved with

gang-related behaviors or the Black Guerilla family, for example. Rather, he has

been considered as a mentor and a peacekeeper within the prison system …" *Id*.

### FIRST CLAIM FOR RELIEF

VIOLATION OF PAROLE COMMISSION AND REORGANIZATION ACT 18 U.S.C.
§ 4206(D) AS INTERPRETED AND APPLIED IN 28 C.F.R. § 2.53 BY
EFFECTIVELY MAKING DENIAL OF MANDATORY PAROLE A FINAL AND
PERMANENT DENIAL OF PAROLE

143.   Petitioner realleges and incorporates into this claim of relief the

allegations made in paragraphs 1-142 of this Complaint.

144.   The Commission's regulation and policy applied in this case and

all similar cases precluding release on parole under § 4206(a) if the

Commission finds an inmate ineligible for release under § 4206(d) conflicts

---

48 On the LSI-R test, "he presents as a low-risk/needs group. His cumulative
frequency for prison inmates was 6.6%, meaning that 93-94% of the inmates
would have higher scores than him." *Id*. at 15.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 67 -

with the Parole Commission and Reorganization Act and violates prisoners'

Fifth Amendment due process and equal protection rights.

145.   Section 4206(d) creates a liberty interest that inmates possess to

have the Commission adopt consistent and rational standards for what

constitutes "frequent[ ]" and "serious[ ]" rule violations and to have the rules

applied consistently to Petitioner and all similarly situated inmates considered

for release on parole. The Commission's failure to issue guidelines or standards

regarding its interpretation of the terms "frequently" and "seriously" as used in

§ 4206(d), and its inconsistent application of these terms in Petitioner's and

proposed class members' cases violates the Parole Commission and

Reorganization Act, and the due process clause and equal protection guarantees

of the Fifth Amendment as this failure deprives Petitioner and proposed class

members of fair parole hearings that do not lead to entirely arbitrary,

unreasonable, unwarranted, and unauthorized denials of parole.

146.   Petitioner and the proposed class members are therefore in custody

in violation of the laws of the United States.

## SECOND CLAIM FOR RELIEF

THE BUREAU OF PRISONS VIOLATED ITS REGULATIONS, DUE PROCESS
AND EQUAL PROTECTION BY CHARGING PETITIONER WITH AN OFFENSE
NOT DEFINED IN RESPONDENT'S RULES, DESTROYING THE PRIMARY
EVIDENCE ALLEGEDLY SHOWING A TELEPHONE RULE VIOLATION,
ASSIGNING A HEARING DISCIPLINARY OFFICER NOT QUALIFIED UNDER

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 68 -

BOP RULES, AND THWARTING PETITIONER'S ABILITY TO FILE A TIMELY APPEAL.

147.   Petitioner realleges and incorporates into this claim of relief the allegations made in paragraphs 1-142 of this Complaint.

148.   The BOP violated its rules and procedures and the due process clause of the Fifth Amendment when it found Petitioner had violated prison rules when no BOP rule states that an inmate may not be placed on a speaker phone when calling someone on the prisoner's approved telephone list and speak to other people present with the person called.

149.   The BOP violated its rules and procedures and the due process clause of the Fifth Amendment when it destroyed the tape recording of the telephone call that formed the basis for the disciplinary charge over Petitioner's objection prior to the hearing and resolution of any appeals. BOP's Inmate Discipline Program requires that "if the inmate requests exculpatory evidence, such as video or audio surveillance, the investigator must make every effort to review and preserve the evidence." BOP Prog. Stat. 5270.09 § 541.5(b)(2) (July 8, 2011). *See also* 28 C.F.R. 541.7(e) (stating that prisoners "are entitled to make a statement and present documentary evidence to the UDC on [their] own behalf."); 28 C.F.R. § 541.8(f) (stating that prisoners "are entitled to make a statement and present documentary evidence to the DHO on [their] own behalf.").

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 69 -

150.   The BOP also violated Petitioner's due process and equal protection rights by charging him with a rule violation when other similarly situated prisoners are never similarly charged. The BOP's actions as alleged above were arbitrary, unreasonable, unwarranted, and unauthorized.

151.   Petitioner is therefore in custody in violation of the laws of the United States.

## THIRD CLAIM FOR RELIEF

VIOLATION OF PAROLE COMMISSION AND REORGANIZATION ACT, AGENCY REGULATIONS, THE ADMINISTRATIVE PROCEDURES ACT, AND DUE PROCESS BY FAILING TO PROVIDE PRE-HEARING DISCLOSURES.

152.   Petitioner realleges and incorporates into this claim of relief the allegations made in paragraphs 1-142 of this Complaint.

153.   28 U.S.C. § 4208(b) and 28 C.F.R. § 2.55 require the Commission provide certain pre-hearing disclosures to inmates appearing in parole hearings. These provisions are mandatory and so they also create a liberty interest that inmates possess to receive pre-hearing disclosures. The Commission's failure to provide full pre-hearing disclosure was arbitrary, unreasonable, unwarranted, and unauthorized, and violated the Parole Commission and Reorganization Act, the Administrative Procedures Act, the Commission's promulgated regulations, and the due process clause of the Fifth Amendment as this failure deprived Petitioner of a fundamentally fair parole hearing leading to the denial of release on parole.

PETITION FOR A WRIT OF HABEASU CORPUS PURSUANT TO 28 U.S.C. § 2241

- 70 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

154.   Petitioner is therefore in custody in violation of the laws of the United States.

FOURTH CLAIM FOR RELIEF

THE COMMISSION VIOLATED ITS RULES, DUE PROCESS AND EQUAL PROTECTION BY RELYING UPON ALLEGEDLY ADVERSE FACTORS NOT RELIED UPON BY THE COMMISSION IN PREVIOUS INTERIM PAROLE HEARINGS.

155.   Petitioner realleges and incorporates into this claim of relief the allegations made in paragraphs 1-142 of this Complaint.

156.   Despite its rule at 28 C.F.R. § 2.55 stating that at subsequent hearings "the Commission only considers information concerning significant developments or changes in the prisoner's status since … a prior interim hearing" (emphasis added), the Commission denied parole in 2016 and 2018 based on numerous facts and allegedly adverse evidence the Commission had not relied upon in Petitioner's 2014 and previous parole hearings, including (i) the written submissions and testimony of U.S. Attorney Jacobson and former FBI agent Mitchell, (ii) the fact that over 30 years Petitioner had sometimes referred to himself as a "victim" of the FBI's illegal COINTELRO program, (iii) the fact that over 30 years Petitioner had sometimes referred to himself as a "political prisoner," (iv) the fact that over 30 years Petitioner had sometimes signed letters with the salutation "stiff resistance," (v) the fact that in 2003 Petitioner had minor telephone use violations, and (vi) the fact that over 27 years before the hearing Petitioner had a rule violation for a positive urine test. In 2014

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 71 -

the Commission denied parole (after the Hearing Examiner recommended

granting parole) only because in 2013 the Petitioner had a rule violation based

on his telephone call to Professor Karen Stanford who briefly placed him on a

speakerphone so his comments supporting non-violent social change could be

heard by university students. None of the matters described above involved

"significant developments or changes in the prisoner's status since … [the] prior

interim hearing …" 28 C.F.R. § 2.55. The Commission's actions described

above were arbitrary, unreasonable, unwarranted, and unauthorized, and

violated the Parole Commission and Reorganization Act, 28 C.F.R. § 2.55, and

the due process clause and equal protection guarantees of the Fifth Amendment.

157.   Petitioner is therefore in custody in violation of the laws of the

United States.

## FIFTH CLAIM FOR RELIEF

THE COMMISSION MISCONSTRUED THE PLAIN MEANING OF AND VIOLATED
18 U.S.C. § 4206(D) BY PRETEXTUALLY FINDING A SINGLE 28-YEAR-OLD
POSITIVE DRUG TEST A "SERIOUS" VIOLATION FOREVER PRECLUDING
PAROLE.

158.   Petitioner realleges and incorporates into this claim of relief the

allegations made in paragraphs 1-142 of this Complaint.

159.   Before and again in 2018 the Commission failed to disclose its

criteria for deciding whether an old prison rule violation was "serious"

preventing release under 28 USC § 4206(d), and inconsistently and arbitrarily

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 72 -

concluded some rule violations are serious and others not, including escapes

and attempted escapes, which are obviously more serious than the ancient

positive drug test used as a basis to deny parole in this case. The Commission's

failure to issue guidelines or standards regarding its interpretation of the term

"serious" as used in § 4206(d) and its inconsistent application of the term are

arbitratry, unreasonable, unwarranted, and unauthorized, and violate the Parole

Commission and Reorganization Act, and the due process clause and equal

protection guarantee of the Fifth Amendment.

160.   Petitioner is therefore in custody in violation of the laws of the

United States.

## SIXTH CLAIM FOR RELIEF

THE COMMISSION'S VIOLATION OF REGULATIONS, DUE PROCESS AND
EQUAL PROTECTION BY RELYING UPON PETITIONER'S ALLEGED 2013
TELEPHONE RULE VIOLATION

161.   Petitioner realleges and incorporates into this claim of relief the

allegations made in paragraphs 1-142 of this Complaint.

162.   The Commission's denial of parole based on an alleged rule

violation involving a February 5, 2013 telephone call by Petitioner to a group of

university students violates the Parole Commission and Reorganization Act and

the due process clause of the Fifth Amendment inasmuch as the Commission

was fully advised that (i) the telephone call violated no known BOP rule, (ii) the

BOP destroyed the tape recording of the call prior to the disciplinary hearing,

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 73 -

and (iii) the BOP thwarted the Petitioner's ability to appeal the decision of a

rule violation because he was in lock down when the appeal was due.

163.   Petitioner is therefore in custody in violation of the laws of the

United States.

<u>SEVENTH CLAIM FOR RELIEF</u>

THE COMMISSION MISCONSTRUED AND VIOLATED 18 U.S.C. § 4206(D)
WHEN IT ERRONEOUSLY CONCLUDED PETITIONER IS LIKELY TO REOFFEND IF
RELEASED BECAUSE IN THE PAST HE HAS REFERRED TO HIMSELF AS A
"VICTIM" OF THE FBI'S COINTELPRO PROGRAM.

164.   Petitioner realleges and incorporates into this claim of relief the

allegations made in paragraphs 1-142 of this Complaint.

165.   The Commission unreasonably and unlawfully concluded

Petitioner is likely to reoffend if released on parole because he has referred to

himself as a subject of the FBI's illegal COINTELRO program. In fact, Trial

Judge Haight, Jr. stated in this case that documents obtained under the FOIA

"demonstrate that for a considerable time Shakur …[has] been the subject of

illegal surveillance, harassment, and disinformation by the FBI as part of that

lamented, unconstitutional project known as COINTELPRO." *United States v.*

*Shakur*, 1988 U.S. Dist. LEXIS 2762, pp. 16-17 (F, 1988). The Commission

also violated its regulations by relying on Petitioner's statement that he was a

victim of the COINTELPRO program, when it did not rely on this conduct in its

earlier parole hearings and decisions. Section 4206(d) creates a liberty interest

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 74 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

that inmates will have a fair hearing and will not be denied parole based on false facts relied upon by the Commission contradicted by undisputed facts set forth in the record. The Commission's actions described above were arbitrary, unreasonable, unwarranted, and unauthorized, and violate the Parole Commission and Reorganization Act, and the due process clause and equal protection guarantee of the Fifth Amendment.

166.   Petitioner is therefore in custody in violation of the laws of the United States.

## EIGHTH CLAIM FOR RELIEF

THE COMMISSION MISCONSTRUED AND VIOLATED 18 U.S.C. § 4206(D) WHEN IT ERRONEOUSLY CONCLUDED PETITIONER IS LIKELY TO REOFFEND IF RELEASED BECAUSE IN THE PAST HE HAS REFERRED TO HIMSELF AS A "POLITICAL" PRISONER.

167.   Petitioner realleges and incorporates into this claim of relief the allegations made in paragraphs 1-142 of this Complaint.

168.   The Commission arbitrarily and unlawfully concluded Petitioner is likely to reoffend if released on parole because he has in the past occasionally referred to himself as a "political" prisoner. Petitioner has never argued that his conviction is "political" in nature. He has said that the crimes of which he was convicted were politically motivated. The indictment itself discusses the political nature of the crimes charged. During the trial, U.S. District Judge Charles S. Haight, Jr. acknowledged the political nature of Petitioner's history,

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 75 -

circumstance, motivation and intentions related to his conviction. These facts are in the record but were ignored by the Commission. The Commission also violated its regulations by relying on Petitioner's use of the term "political" prisoner when it did not rely on this conduct in its earlier parole hearings and decisions. Section 4206(d) creates a liberty interest that inmates will have a fair hearing, will not be denied parole based on false facts relied upon by the Commission contradicted by facts in the record, and will be treated in a manner similar to similarly situated inmates seeking release on parole. The Commission's actions described above were arbitrary, unreasonable, unwarranted, and unauthorized, and violate the Parole Commission and Reorganization Act, and the due process clause and equal protection guarantee of the Fifth Amendment.

169.   Petitioner is therefore in custody in violation of the laws of the United States.

## NINTH CLAIM FOR RELIEF

THE COMMISSION MISCONSTRUED AND VIOLATED 18 U.S.C. § 4206(D) WHEN IT ERRONEOUSLY CONCLUDED PETITIONER IS LIKELY TO REOFFEND IF RELEASED ON PAROLE BECAUSE HE HAS OCCASIONALLY ENDED LETTERS WITH THE SALUTATION "STIFF RESISTANCE".

170.   Petitioner realleges and incorporates into this claim of relief the allegations made in paragraphs 1-142 of this Complaint.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 76 -

171.   The Commission unreasonably and unlawfully concluded Petitioner is likely to reoffend if released on parole because he has twice long ago ended letters with the salutation "stiff resistance." Petitioner made clear that the salutation "stiff resistance" has been to serve to fortify an individual's character and resolve in the face of their specific challenges, and Petitioner has "never intended its use to encourage criminality ..." He renounced using the term "stiff resistance" two years ago. Congress could not possibly have intended that in denying parole the Commission would ignore an inmate's consistent substantive message of peace and conciliation in his letters and public statements for several decades while focusing entirely on a salutation at the close of two letters to keep a rehabilitated inmate in prison likely until he dies. The Commission also violated its regulations by relying on Petitioner's "stiff resistance" salutation when it did not rely on this conduct in its earlier parole hearings and decisions. Section 4206(d) creates a liberty interest that inmates will have a fair hearing, will not be denied parole based on false facts relied upon by the Commission contradicted by facts set forth in the record, and will be treated in a manner similar to similarly situated inmates seeking release on parole. The Commission's actions described above were arbitrary, unreasonable, unwarranted, and unauthorized, and violate the Parole Commission and Reorganization Act, and the due process clause and equal protection guarantee of the Fifth Amendment.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

- 77 -

172.   Petitioner is therefore in custody in violation of the laws of the United States.

<u>TENTH CLAIM FOR RELIEF</u>

THE COMMISSION MISCONSTRUED AND VIOLATED 18 U.S.C. § 4206(D) WHEN IT UNREASONABLY CONCLUDED PETITIONER'S ACCEPTANCE OF RESPONSIBILITY WAS NOT CREDIBLE AND HE IS THEREFORE LIKELY TO REOFFEND IF RELEASED ON PAROLE.

173.   Petitioner realleges and incorporates into this claim of relief the allegations made in paragraphs 1-142 of this Complaint.

174.   The Commission unreasonably and unlawfully concluded Petitioner is likely to reoffend if released on parole because his statements accepting responsibility for the underlying crimes is recent and therefore insincere.  Petitioner has accepted responsibility for the crimes and expressed remorse for many years and there is no evidence his acceptance of responsibility is not sincere. Congress did not intend that the Commission would ignore an inmate's consistent substantive message of peace and conciliation in his letters and public statements for several decades while relying on a finding, unsupported in the record, that his acceptance of responsibility is not sincere and therefore he is likely to reoffend if released on parole. Section 4206(d) creates a liberty interest that inmates will have a fair hearing, will not be denied parole based on conclusions unsupported in the record and disputed by an abundance of uncontroverted facts in the record, and

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057
213/388-8693

will be treated in a manner similar to similarly situated inmates seeking release on parole. The Commission's actions described above were arbitrary, unreasonable, unwarranted, and unauthorized, and violate the Parole Commission and Reorganization Act, and the due process clause and equal protection guarantee of the Fifth Amendment.

175.   Petitioner is therefore in custody in violation of the laws of the United States.

<u>ELEVENTH CLAIM FOR RELIEF</u>

THE COMMISSION MISCONSTRUED AND VIOLATED 18 U.S.C. § 4206(D) WHEN IT UNREASONABLY CONCLUDED PETITIONER'S CIRCUMSTANCES HAD NOT CHANGED SINCE THE COMMISSION'S PREVIOUS DENIAL OF PAROLE.

176.   Petitioner realleges and incorporates into this claim of relief the allegations made in paragraphs 1-142 of this Complaint.

177.   The Commission arbitrarily and unlawfully concluded Petitioner had presented no new facts warranting reconsideration of its prior decision denying parole when Petitioner in fact presented new evidence including an unequivocal assessment by BOP leadership that Petitioner is rehabilitated and is unlikely to reoffend if released on parole, firm and realistic job offers, and uncontroverted evidence that for two years Petitioner no longer used the salutation "Stiff Resistance." Section 4206(d) creates a liberty interest that inmates will have a fair hearing, will not be denied parole based on conclusions unsupported in the record and disputed by an abundance of uncontroverted facts

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 79 -

in the record, and will be treated in a manner similar to similarly situated inmates seeking release on parole. The Commission's actions described above were arbitrary, unreasonable, unwarranted, and unauthorized, and violate the Parole Commission and Reorganization Act, and the due process clause and equal protection guarantee of the Fifth Amendment.

178.    Petitioner is therefore in custody in violation of the laws of the United States.

<u>TWELFTH CLAIM FOR RELIEF</u>

VIOLATION OF DUE PROCESS AND EQUAL PROTECTION BY COMMISSION ADOPTING RULE VIOLATIONS DIFFERENTLY IN PETITIONER'S CASE THAN IN OTHER FEDERAL INMATES' CASES OVER THE PAST SEVERAL YEARS

179.    Petitioner realleges and incorporates into this claim of relief the allegations made in paragraphs 1-142 of this Complaint.

180.    The Commission arbitrarily and without a rational basis, in violation of the equal protection guarantee of the Fifth Amendment, treated Petitioner's eligibility for release on parole far more harshly than the manner in which it adjudicated all other parole cases. There is no lawful basis for this disparate and discriminatory treatment. In this case the Commission failed to act as a neutral, unbiased decision-maker, and made arbitrary and result-oriented decisions aimed at denying Petitioner release on mandatory or discretionary parole. The Commission's actions described above were arbitrary, unreasonable, unwarranted, and unauthorized, and violate the Parole

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 80 -

Commission and Reorganization Act, and the due process clause and equal protection guarantee of the Fifth Amendment.

181.   Petitioner is therefore in custody in violation of the laws of the United States.

### THIRTEENTH CLAIM FOR RELIEF

FIRST AMENDMENT RETALIATION

182.   Petitioner realleges and incorporates into this claim of relief the allegations made in paragraphs 1-142 of this Complaint.

183.   The Commission's focus on Petitioner's protected non-violent political speech in its Notices of Decision violated Petitioner's rights to political speech under the First Amendment. The Commission's actions described above were arbitrary, unreasonable, unwarranted, and unauthorized, and violate the Parole Commission and Reorganization Act, and the due process clause and equal protection guarantee of the Fifth Amendment.

184.   Petitioner is therefore in custody in violation of the laws of the United States.

### FOURTEENTH CLAIM FOR RELIEF

THE COMMISSION VIOLATED THE PAROLE COMMISSION AND REORGANIZATION ACT AND REGULATIONS PROMULGATED THEREUNDER BY CONSIDERING IRRELEVANT TESTIMONY FROM A FORMER PROSECUTOR AND FBI INVESTIGATOR AS TO PETITIONER'S POST-CONVICTION CONDUCT AND STATE OF MIND.

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 81 -

185.   Petitioner realleges and incorporates into this claim of relief the allegations made in paragraphs 1-142 of this Complaint.

186.   The testimony of AUSA Jacobson and retired FBI Agent Mitchell as to Petitioner's post-conviction conduct and current state of mind in 2016 and 2018, was irrelevant and considered in contravention of the Commission's duties under the PCRA to remain independent of prosecutorial influence and to exclude any repetitious or irrelevant testimony. The Commission permitted the majority of time during the 2016 and 2018 hearings to be dedicated to law enforcement and victims' testimony irrelevant t the factors contained in § 4206(d). None of this testimony involved "significant developments or changes in the prisoner's status since … [the] prior interim hearing …" 28 C.F.R. § 2.55. On information and belief, the Commission does not consider such extraneous testimony in similar cases.  The Commission's actions described above were arbitrary, unreasonable, unwarranted, and unauthorized, and violate the Parole Commission and Reorganization Act, 22 C.F.R. § 2.55, and the due process clause and equal protection guarantee of the Fifth Amendment.

187.   Petitioner is therefore in custody in violation of the laws of the United States.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 82 -

1.       Grant Petitioner's Petition for Writ of Habeas Corpus pursuant to § 2241 and Order Petitioner released on parole or alternatively order a new parole hearing to be held within 30 days and in compliance with relevant statutes, the Commission's extant rules and regulations, the Constitution, and such Orders as this Court may issue;

2.       Certify a class as proposed herein and issue a declaratory judgment and permanent injunction requiring that the Commission consider Petitioner and similarly situated prisoners for release on parole under the terms of both 18 U.S.C. § 4206 (a) and (d), and issue standards regarding and consistently apply its interpretation of the terms "serious" and "frequently" as used in § 4206(d);

3.       Issue judgment that the Commission's failure to provide Petitioner with pre-hearing records or evidence the Commission relied upon to deny release in 2016 and 2018 violated the Parole Commission and Reorganization Act, the regulations issued thereunder, and the due process guarantee of the Fifth Amendment and enjoin the Commission in any further parole hearing from not disclosing to Petitioner 30 days prior to the hearing any records or evidence the Commission intends to rely upon in making a parole decision;

4.       Issue a judgment that the Commission's reliance on allegedly adverse facts or evidence predating previous parole hearings and that are unrelated to significant developments or changes in the prisoner's status since the prior interim hearing violates the Parole Commission and Reorganization

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 83 -

Act, 28 C.F.R. § 2.55, and the due process and equal protection guarantees of the Fifth Amendment, and issue an injunction enjoining the Commission in any further parole hearing from relying on alleged adverse facts or evidence unrelated to significant developments or changes in the prisoner's status since the prior interim hearing;

5.    Issue a judgment that the Commission's failure to issue standards and ad hoc approach regarding how it defines "serious" rule violations and whether Petitioner has "frequently" violated rules precluding release un §4206(d) violates the Parole Commission and Reorganization Act, the regulations issued thereunder, and the due process and equal protection guarantees of the Fifth Amendment, and enjoin the Commission in any further parole hearings from denying release on parole based on alleged past "serious" rule violations or a prisoner having "frequently" violated rules without providing Petitioner and proposed class members with the Commission's interpretation of these terms equally applied to all prisoners eligible for release under § 4206(d);

6.    Issue a judgment that the Commission's reliance on Petitioner's past occasional reference to himself as a victim of COINTELPRO, a "political" prisoner, and twice using the salutation "stiff resistance" to deny parole violates the Parole Commission and Reorganization Act, the regulations issued thereunder, and the First Amendment and due process and equal protection

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 84 -

guarantees of the Fifth Amendment, and enjoin the Commission in any further

parole hearing from denying release because Petitioner in the past occasionally

referred to himself as a victim of COINTELPRO, a "political" prisoner, and on

two known occasions used the salutation "stiff resistance";

7.      Issue a judgment that the Commission's failure to consider

Petitioner's exemplary prison record and repeated and long-standing opposition

to violence to achieve social change violates the Parole Commission and

Reorganization Act, the regulations issued thereunder, and the due process and

equal protection guarantees of the Fifth Amendment, and enjoin the

Commission in any further parole hearing from ignoring Petitioner's exemplary

prison record and repeated and long-standing stand against violence to achieve

social change;

8.      Issue a judgment that the Commission's reliance on a 27-year old

positive drug test to deny parole violates the Parole Commission and

Reorganization Act, the regulations issued thereunder, and the due process and

equal protection guarantees of the Fifth Amendment, and enjoin the

Commission in any further parole hearing held under. § 4206(d) from relying on

the twenty-seven year old drug test to deny release on parole;

9.      Issue a judgment that the Commission's reliance on old minor

telephone rule violations to deny parole because they allegedly show that

Petitioner "frequently" violated prison rules during almost thirty years of

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 85 -

incarceration violates the Parole Commission and Reorganization Act, the regulations issued thereunder, and the due process and equal protection guarantees of the Fifth Amendment, and enjoin the Commission in any further parole hearing from relying on these old telephone violations to deny release on parole because they allegedly show Petitioner "frequently" violated prison rules or show Petitioner is now likely to reoffend if released on parole;

10. Issue a judgment that BOP's telephone rule violation of March 20, 2013, was issued by BOP in violation of BOP rules regarding the substance of telephone rule violations, after the destruction of relevant evidence, and Petitioner's appeal rights were interfered with, all in violation of BOP's telephone use rules and Petitioner's due process and equal rights, and direct the BOP to vacate its finding of a rule violation and enjoin the Commission from relying on the alleged rule violation to deny Petitioner release on parole;

11. Award reasonable attorneys' fees and costs pursuant to any applicable provisions of federal law; and

12. Grant such other relief as Petitioner may seek and law and justice require.

Dated: April 18, 2019

PETER A. SCHEY
CARLOS R. HOLGUIN
CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW

BENJAMIN L. CRUMP, ESQUIRE
PRESIDENT

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

- 86 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

1
2
                                    NATIONAL BAR ASSOCIATION
                                    PARKS & CRUMP, L.L.C.

3
4
5
                                    MICHAEL BRENNAN
                                    HEIDI RUMMEL
                                    POST-CONVICTION JUSTICE PROJECT
                                    USC GOULD SCHOOL OF LAW

6
7
8
9
                                    PROFESSOR LENNOX S. HINDS
                                    DEIDRA L. MCEACHERN
                                    NATIONAL CONFERENCE OF BLACK
                                    LAWYERS

10
                                    OF COUNSEL:

11
12
                                    MICHAEL W. WARREN
                                    LAW OFFICE OF MICHAEL WARREN, P.C.

13
14
                                    TERI THOMPSON
                                    TERI THOMPSON, LLC

15
16
                           Signed: /s/Peter A. Schey

17
18
/ / /

19
20
21
22
23
24
25
26
27
28

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 87 -

## CERTIFICATE OF SERVICE

I, Peter Schey, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On April 21, 2019 , I electronically filed the following document(s):

- PLAINTIFFS' PETITION FOR WRIT OF HABEAS CORPUS PUSUANT TO 28 U.S.C. § 2241

with the United States District Court, Central District of California by using the CM/ECF system.

*/s/Peter Schey*
Attorney for Plaintiffs

PETITION FOR A WRIT OF HABEASU CORPUS
PURSUANT TO
28 U.S.C. § 2241

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 88 -